**Warren Keith RODGERS, Appellant**

v.

**The STATE of Texas.**

**No. PD–0645–05.**

Court of Criminal Appeals of Texas.

May 3, 2006.

James W. Volberding, Tyler, for Appellant.

Henry Whitley, Special Assistant Criminal District Attorney, Quitman, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court, in which MEYERS, WOMACK, JOHNSON, KEASLER, HERVEY, and HOLCOMB, JJ., joined.

In this case we hold that a motion to strike an expert witness's testimony based on his lack of qualifications, which is made after the witness has testified, can serve as a renewed objection to the trial court's earlier ruling that the witness was qualified. In these circumstances, an appellate court reviews the trial court's ruling based upon all of the evidence before the court at the time of the motion to strike. Although we disavow some of the language in the court of appeals's opinion, we affirm its ultimate conclusion that the State's expert was qualified to testify under Rule 702 of the Texas Rules of Evidence.[1]

### I.

At trial, the State's evidence showed that appellant ran over his wife with his van, and then placed her injured body on a railroad track to be run over by a train. A latent-print examiner, A.J. Jumper, was called to testify as an expert about his comparisons of the soles of appellant's shoes and tire imprints from his van with impressions made from a shoe print and tire tracks found near the railroad tracks. Appellant tested Mr. Jumper's qualifications on voir dire and objected that he was not an expert in either tire or shoe comparisons. The trial court overruled that objection, and Mr. Jumper testified that his comparisons revealed common or similar characteristics. Appellant continued to challenge Mr. Jumper's qualifica-

---

1. *Rodgers v. State,* 162 S.W.3d 698, 708 (Tex. App.-Texarkana 2005).

tions during his cross-examination and ultimately made a motion to strike the shoe-imprint-comparison testimony.[2] The trial court denied that motion. The jury convicted appellant of murder and sentenced him to life imprisonment and a $10,000 fine.

On appeal, appellant claimed that the trial court erred in allowing Mr. Jumper to testify as an expert. He relied, in part, on evidence he developed during his extensive cross-examination. The court of appeals declined to consider that evidence, however, because it was developed "*after* Jumper had already expressed his opinions before the jury."[3] It held that, based on the evidence at the time of its original ruling, the trial court had not abused its discretion in permitting Mr. Jumper to testify as an expert on tire and shoe-print comparisons.[4]

## II.

■ Rule 702 of the Texas Rules of Evidence states,

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.[5]

Thus, before admitting expert testimony under Rule 702, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case.[6]

■ A trial court need not exclude expert testimony simply because the subject matter is within the comprehension of the average jury.[7] If the witness has some special knowledge or additional insight into the field that would be helpful, then the expert can assist the trier of fact to understand the evidence or to determine a fact in issue. An expert "may add precision and depth to the ability of the trier of fact to reach conclusions about subjects which lie well within common experience."[8] Because the possible spectrum of education,

2. Appellant did not explicitly renew his objection to Mr. Jumper's tire-comparison testimony, but it is apparent from the context that the trial judge and the prosecutor clearly understood appellant's objection as being based on the fact that Mr. Jumper was not an expert in *either* tire or shoe identification. Because appellant's argument is precisely the same concerning both areas and because the trial judge and prosecutor clearly understood (and the trial judge rejected) appellant's same argument concerning both areas, the underlying purposes of Rule 103(a) were served. In this particular scenario, then, appellant's motion to strike Mr. Jumper's shoe comparison testimony served to preserve his complaint concerning Mr. Jumper's tire comparison testimony as well. *See* Tex.R. Evid. 103(a) (the opponent of evidence must state "the specific ground of objection, if the specific ground was not apparent from the context").

3. *Rodgers*, 162 S.W.3d at 708.

4. *Id.*

5. Tex.R. Evid. 702.

6. *Alvarado v. State*, 912 S.W.2d 199, 215–216 (Tex.Crim.App.1995).

7. *See* 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence 702[02], at 702–20 (1995) (noting that to exclude expert testimony when the subject is comprehensible by the average juror "is incompatible with the standard of helpfulness expressed in Rule 702").

8. 3 David W. Louisell & Christopher B. Mueller, Federal Evidence § 382, at 640 (1979). *See Holloway v. State*, 613 S.W.2d 497, 501 (Tex.Crim.App.1981).

skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case.[9]

■ Appellate courts may consider several criteria in assessing whether a trial court has clearly abused its discretion in ruling on an expert's qualifications. First, is the field of expertise complex? The degree of education, training, or experience that a witness should have before he can qualify as an expert is directly related to the complexity of the field about which he proposes to testify.[10] If the expert evidence is close to the jury's common understanding, the witness's qualifications are less important than when the evidence is well outside the jury's own experience. For example, DNA profiling is scientifically complex; latent-print comparison (whether of fingerprints, tires, or shoes) is not. Second, how conclusive is the expert's opinion? The more conclusive the expert's opinion, the more important is his degree of expertise. Testimony that "a given profile occurred one time in 2.578 sextillion (2.578 followed by 21 zeroes), a number larger than the number of known stars in the universe (estimated at one sextillion)"[11] requires a much higher degree of scientific expertise than testimony "that the defendant's tennis shoe could have made the bloody shoe print found on a piece of paper in the victim's apartment."[12] And third, how central is the area of expertise to the resolution of the lawsuit? The more dispositive it is of the disputed issues, the more important the expert's qualifications are. If DNA is the only thing tying the defendant to the crime, the reliability of the expertise and the witness's qualifications to give his opinion are more crucial than if eyewitnesses and a confession also connect the defendant to the crime.[13]

■ In any event, the appellate court must review the trial court's ruling in light of what was before that court at the time

9. *See Joiner v. State*, 825 S.W.2d 701, 708 (Tex.Crim.App.1992); *Steve v. State*, 614 S.W.2d 137, 139 (Tex.Crim.App.1981). For this reason, appellate courts rarely disturb the trial court's determination that a specific witness is or is not qualified to testify as an expert. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex.Crim.App.2000) ("The question of whether a witness offered as an expert possesses the required qualifications rests largely in the trial court's discretion. Absent a clear abuse of that discretion, the trial court's decision to admit or exclude testimony will not be disturbed").

10. *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996); *Perez v. State*, 113 S.W.3d 819, 831–34 (Tex. App.–Austin 2003, pet. ref'd).

11. *Wilson v. State*, 185 S.W.3d 481, 486 (Tex. Crim.App.2006) (Johnson, J., concurring).

12. *State v. Oliver*, 341 N.W.2d 744, 747 (Iowa 1983) ("A criminalist compared a bloody shoe print found on a piece of paper in the victim's apartment with the sole of the defendant's tennis shoe. The witness was permitted to testify over defendant's foundation objection that defendant's shoe could have made the impression on the paper.... In this case the expert found a similar tread pattern, similar shoe size, and twelve similar individual or manufacturing defects. No dissimilarities were found. We find no abuse of trial court discretion in admitting the expert opinion.").

13. *Cf. United States v. Everett*, 972 F.Supp. 1313, 1319–20 (D.Nev.1997) (police officer was qualified to testify to Drug Recognition Evaluation protocol and to the probabilities that a person is under the influence of drugs based upon that protocol, but could not testify that his opinion was an established fact; noting that courts should consider to what use the opinion may be put; "If the opinion or conclusion is proffered as expert testimony, going to and dispositive of the ultimate issue, that is one use. If it is merely used to find probable cause" to arrest and require a toxicological exam, "that is another use").

the ruling was made.[14]

## III.

In the present case, the State established, on direct examination, that Mr. Jumper is a latent print examiner for the Dallas County Southwestern Institute of Forensic Sciences (SWIFS). His qualifications as an expert latent print examiner included: training in the physical evidence section of the Dallas County Sheriff's Office; an apprenticeship with a certified print examiner; classes and courses on the matching of shoe and tire imprints at the Dallas County Sheriff's Office and at the University of North Texas; a shoe and tire imprint training class with a former FBI expert; and a tire imprint training class at an FBI conference.

When asked if he was "able then to take a, not just fingerprints but a tire print or shoe print and make comparisons between an item from a crime scene and some other item or known item that you later located," Mr. Jumper replied that he could. He also stated that he had testified "[o]ver 150 times" in Texas courts. Appellant then took Mr. Jumper on voir dire "to test his qualifications under 702." That voir dire revealed, among other things, that

Mr. Jumper had never graduated from college, had never written articles on tire prints, had only a few days of class work specific to the matching of shoe and tire imprints, and had testified only twice before regarding tire-print comparisons. When asked, "Is most of your job fingerprints?" Mr. Jumper answered, "That's the bulk of it."

Appellant then objected at a bench conference. He agreed that Mr. Jumper was a fingerprint-identification expert, but argued that he was not a shoe- or tire-imprint identification expert. Appellant pointed to Mr. Jumper's relative lack of experience, training, and education in the specific area of shoe- and tire-imprint comparison.[15]

After the trial court overruled appellant's objections, Mr. Jumper testified before the jury about his comparisons. Asked if there was a match between appellant's shoe and the imprint found at the scene, Mr. Jumper testified: "I can't exclude this shoe and I can't state . . . as a fact that this shoe made that imprint. It has similar characteristics and design as you can see in the, the photograph. . . ." Asked if he could "say for sure" that ap-

---

**14.** *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App.2000).

**15.** Among appellant's arguments and objections were the following:

* "Your Honor, I would like to come and challenge his qualifications. I didn't necessarily want to do that in front of the jury. I don't have any other questions on my *Daubert* challenge."
* "On paper, he looks good but when you look at the actual details, it's all about fingerprints and that's what I just discovered because he listed all of his qualifications and pretty much loads it together."
* "[I]t was only when I heard him list his qualifications I realized there might be an issue and looked at his resume and it's rather weak."

* "My objection is he's not qualified under *Daubert* or *Kelly*. He doesn't meet the qualifications by any level of standard. If he's going to testify to scientific testing that he's familiar, well, maybe he's qualified to express an opinion on taking a tire print and matching it to an individual tire or even a class of tires, I don't see how any way that a grand total of 14 days of classroom training on any subject period would make anyone an expert any time when that leaves his work qualifications which although respectful are limited to two years of training through a supervisor and . . . on the job training. He's already testified he's only testified twice, he's only made two reports."
* "He didn't get to 702. He doesn't meet the qualifications of 702 or 703."

pellant's tires made the tracks found at the scene, he answered "No sir, I can't say that those are the only tires that could have made those tracks.... I can tell you that there is a similarity in the physical shape and design as I pointed out...."

Appellant then cross-examined Mr. Jumper for half a day. The cross-examination was broken up by several bench conferences and lengthy voir dire examinations outside the jury's presence because the State objected to the relevance of various lines of questioning, such as that designed to expose Mr. Jumper's lack of expertise to identify the size, width, and radius of a tire by reading a tire sidewall.[16] After previewing appellant's proposed cross-examination, the trial court allowed appellant to show that Mr. Jumper "wouldn't know how to pick a tire off the shelf to sell it if he was in the business of selling tires in a tire store," or "identify the make, manufacturer and the size of the shoes." Appellant eventually moved to strike Mr. Jumper's shoe-comparison testimony because "[i]t's just visual. Any juror can look at shoe tread, they can look at the

shoe and they can do visual examination for whatever purpose they deem." The trial court denied that motion and stated that

> the same could be said about fingerprint identification. The Court believes that someone trained in how to go about identifying, finding these factors, while it is visual and presumably jurors have eyes that see in the same manner that an expert can see, that that training and experience is beneficial in knowing what to look for and how to compare it.

In sum, appellant made two distinct requests for relief; the first was the series of objections after appellant's initial "voir dire to test [Mr. Jumper's] qualifications under 702," and the second was his motion to strike Mr. Jumper's shoe-comparison testimony because Mr. Jumper's comparison was "just visual," something that any juror could do himself.[17]

On appeal, appellant argued that the trial court had abused its discretion in qualifying Mr. Jumper as an expert[18] and

---

16. Appellant justified his cross-examination by stating that

* "[T]his man has come into this courtroom and declared himself to be a *Daubert* qualified expert in tire identification. He can no more identify a tire than I can.... I'm identifying his lack of *qualification*."
* "[H]e's not an expert. He doesn't need to be on here under 703. If the jury can look at that tire and look at that print, then they don't need his testimony and he doesn't have anything unique and he can't tell us how to reference the tire."
* "... the question is, is he *qualified* to get to that question."
* "[H]e doesn't have the *qualifications* necessary to identify a tire."

17. As explained in note 2, *supra*, we conclude that the trial judge and prosecutor both understood appellant's motion to strike as going to Mr. Jumper's qualifications to make any type of imprint comparison because he was

not an expert in either tire or shoe *identification*.

18. Among appellant's assertions were the following:

* "Mr. A.J. Jumper fails every test required by *Daubert, Robinson* and *Kelly* ..."
* "Mr. Jumper never attended college."
* "His ignorance of tires and shoes is staggering."
* "Here is a list of what Mr. A.J. Jumper did not know about tires" (listing 10 things)
* "He knew nothing about shoes."
* "Respectfully, Mr. Jumper comes close to being a fraud. It is obvious how Mr. Jumper got his job. Tired of modest salary at the Sheriff's Department, he sold himself to SWIFS by assuring that he would be able to generate fees not only by billing out at as a fingerprint expert, but also ... as an available shoe print and tire print expert. No one bothered to line up some old tires or shoes and ask him a few questions. That

that therefore, the admission of his testimony violated due process. In addressing appellant's claim that the trial court abused its discretion in allowing Mr. Jumper to testify, the court of appeals noted that, after the trial court overruled appellant's objection to Mr. Jumper testifying as an expert,

the State continued with its direct examination of Jumper, eliciting opinions from him, without further objection, that the shoe and tire prints photographed at the scene and the impressions from Rodgers' shoes and tires had similar characteristics and designs. After a weekend recess of the trial, Rodgers conducted a lengthy and detailed cross-examination of Jumper, much of it outside the presence of the jury, during which Rodgers made a strong challenge to Jumper's general knowledge of tires and shoes. Rodgers' "*Daubert, Robinson* and *Kelly*" issues on appeal are largely based on the testimony developed during this cross-examination. Fatal to his contentions, however, is that this testimony came after Jumper had already expressed his opinions before the jury.[19]

The court then held, "Based on the evidence before the trial court at the time of its ruling on Jumper's qualifications, no abuse of discretion has been shown."[20] The court also stated that appellant's due-process claim (based on the alleged deficiencies in Mr. Jumper's qualifications elicited during cross-examination) was inadequately briefed.[21]

■ We agree with appellant that the court of appeals was mistaken in "limiting the scope of its analysis to those questions asked of Jumper initially" and in "excluding testimony developed during subsequent cross-examination."[22] It is clear that the trial court understood appellant to

he would enter a courtroom, make serious claims in a first degree felony murder case, and bill his time seems almost criminal." Appellant devotes considerable time in his brief to issues such as tire codes, widths, sizes, and whether they are radial tires or bias-ply tires. Appellant is apparently confusing expertise in tire print *identification* (i.e., 'this tire track imprint was made by a 2005 19' Goodyear radial tire with a code number of 'P215R78–15') with tire print *comparison* (i.e., 'although I have no idea what specific brand, model, or size of tire made this track, the tire prints made by that tire share many characteristics with and are similar to the tire prints made by the defendant's tire'). Mr. Jumper did not attempt to identify the specific type or brand of tire or shoe that made the imprints on the muddy ground; his testimony was limited to comparing the latent shoe and tire imprints at the scene with imprints left by appellant's shoes and tires.

19.  *Rodgers*, 162 S.W.3d at 707.

20.  *Id.* at 708.

21.  The court of appeals stated,

Rodgers further alleges that Jumper's testimony as an expert witness violated the Due Process Clause of the United States Constitution and that Rodgers was thereby harmed. Rodgers does not provide any authority or argument on how his due process rights were violated. His argument centers on the alleged deficiencies in Jumper's qualifications elicited during cross-examination. He argues and cites cases addressing Rule 702 and the *Daubert/Kelly* line of cases, but offers no argument or authority why such purported error amounts to a due process violation. We find this point of error inadequately briefed and decline to address it. *See* TEX. R. APP. P. 38.1(h); *Vuong v. State*, 830 S.W.2d 929, 940 (Tex. Crim.App.1992).

*Id.* We did not grant review of the court of appeals's conclusion on this issue and therefore express no opinion on that question.

22.  In its brief, the State forthrightly admits that it may be responsible for the court of appeals's inadvertent mistake because it had argued, in that court, that appellant failed to offer any further challenges to Mr. Jumper's qualifications after his initial objection was overruled.

be continually challenging whether Mr. Jumper was qualified by knowledge, skill, training, or education under Rule 702. His motion to strike was a repetition and renewal of his original objection, based upon additional alleged deficiencies developed during cross-examination. This is akin to a situation in which a suppression issue, litigated in a pretrial suppression hearing, is re-litigated at trial. In that situation, an appellate court that reviews the trial court's ruling considers not just the evidence from the motion to suppress hearing, but the relevant trial testimony as well.[23]

■ Nevertheless, we need not remand this case to the court of appeals to re-review the record before reaching a foregone conclusion.[24] This type of testimony has long been admissible, in Texas and elsewhere, by *either* lay or expert witnesses.[25] Decades ago, we noted that shoe print comparison testimony is generally admissible:

[T]he unbroken line of decisions of this state, and every other state with which we are familiar, hold ... that a witness who has made measurements of the tracks, and the foot or shoe of the defen-

dant, or who has made some such comparison between the tracks and the shoes of the defendant, as placing the shoe in the tracks, or who has detailed peculiarities in the tracks on the ground which correspond with the shoes, or with the proven or admitted tracks of the defendant, that in either of these cases or instances the witness may give his opinion as to the similarity of the tracks.[26]

And, as early as the days of the Model T, we said much the same about tire tracks:

There was evidence that appellant owned an automobile; that the tire on one side was smooth and on the other a Diamond tread. There were found on the ground a short distance from the scene of the homicide tracks made by an automobile with a smooth tire on one side and a Diamond tread tire on the other. There was evidence that on the same night that the homicide took place appellant was recognized driving his car. The imprint made by the Diamond tread tire on the mud near the scene of the homicide was preserved and introduced in evidence, and plaster cast of the tire

**23.** *Rachal v. State,* 917 S.W.2d 799, 809 (Tex. Crim.App.1996) ("in determining whether a trial court's [suppression] decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later....However, this general rule is inapplicable where, as in this case, the suppression issue has been consensually re-litigated by the parties during trial on the merits") (citations omitted).

**24.** *McDonald v. State,* 179 S.W.3d 571, 580 (Tex.Crim.App.2005) (Cochran, J., concurring).

**25.** E. LeFevre, Annotation, *Footprints as evidence,* 35 A.L.R.2d 856, 1954 WL 9282, at *2 (1954—Updated July 2005) ("It would seem to be a generally accepted proposition that for

the purpose of identifying the accused as the guilty party, evidence of the correspondence of the accused's shoes or tracks, or those of his horse, to tracks found near the scene of the crime is admissible"); R.P. Davis, Annotation, *Admissibility of evidence as to tire tracks,* 23 A.L.R.2d 112, 1952 WL 7919, at *22 (1952—Updated August 2003) ("In prosecutions for various crimes intentionally committed testimony or evidence that tire marks similar to those on defendant's car were observed at the scene of the crime has been held admissible for the purpose of connecting defendant with the crime").

**26.** *Martinez v. State,* 333 S.W.2d 370, 373 (Tex.Crim.App.1960) (quotations omitted); *see also Luster v. State,* 85 S.W.3d 865, 868 (Tex.App.–Eastland, 2002, pet.ref'd) (shoeprint comparison evidence).

on appellant's car was also made and proof introduced that the tread on his car and the impression on the mud were identical in size and shape. The fact that it was possible that the track may have been made prior to the homicide, or that it might have been made by an automobile other than that of appellant, would, under the circumstances, relate to the weight of the testimony, but would not be legal ground for its rejection.[27]

The reason this kind of testimony is liberally allowed is that the field of tire and shoe comparisons is not particularly complex,[28] the witness's opinions are not conclusive,[29] and consequently, they are generally not pivotal to the resolution of the case.[30]

In this case, the jury heard descriptions of the physical comparisons upon which Mr. Jumper based his conclusions. The exhibits relied on by Mr. Jumper for his physical comparisons were admitted into evidence and were available to the jury during its deliberations; the jury could make its own comparisons. It could also determine the weight and credibility to give to Mr. Jumper's testimony and the likelihood that other individuals with shoes and tires similar to appellant's might have made the prints found by the railroad tracks. There was an abundance of other evidence pointing to appellant as the person who murdered his wife.[31] Under the circumstances, we agree with the court of appeals that the trial court did not abuse its discretion in concluding that Mr. Jumper was sufficiently qualified to testify as an expert on shoe and tire print comparisons.

We affirm the court of appeals.

27. *Haley v. State,* 84 Tex.Crim. 629, 209 S.W. 675, 676 (1919); *see also Wilson v. State,* 863 S.W.2d 59, 62–63 (Tex.Crim.App.1993) (tire-tread-impression comparison evidence).

28. *See State v. Jeter,* 609 So.2d 1019 (La. App.2d Cir.1992) (trial court did not err in qualifying fingerprint expert as an expert in footprint identification, based on seven years' experience in crime-scene detection and self-education in shoe-print identification, although detective's opinion—based on comparison between size and basic overall pattern of shoes worn by defendant and photographs and measurement of shoe prints taken at burglary scene—could properly have been submitted as that of a lay witness).

29. *See Schleeter v. Commonwealth,* 218 Ky. 72, 290 S.W. 1075, 1080 (1927):

In view of the evidence found herein that appellant and his co-defendants used two Cadillac touring cars and a Marmon touring car in transporting the whiskey they had stolen from the home of Mr. Guthrie to that of the witness, Herbert Ballard, it was competent to admit the evidence that a large Cadillac touring car, with tires having treads similar to the impression of the treads found in the tracks of one of the cars that carried the whiskey from Guthrie's home, was found at the home of the mother of appellant, Willard Schleeter, where he lived. *It was a circumstance, though slight, tending to connect appellant with the commission of this offense.*
*Id.* (emphasis added).

30. *See, e.g., Hurrelbrink v. State,* 46 S.W.3d 350, 351–57 (Tex.App.-Amarillo 2001, pet. ref'd) (holding that admission of expert testimony on footprint comparisons was admissible under *Daubert* and *Kelly;* noting that both State and defense experts "were in agreement that footprint analysis is a valid science and could be used for the purposes of identification," and upholding trial court's ruling that expert could not testify that "no two individuals can ever have the same identical footprint"; noting that there was ample other circumstantial evidence tying defendant to the crime and that expert did not testify that he could not state that footprints "matched" with same certainty as can be said of fingerprints).

31. *See Rodgers,* 162 S.W.3d at 702–05 (setting out evidence, including DNA analysis, that proved, beyond a reasonable doubt, that appellant was the person who murdered his wife).

KELLER, P.J., concurred in the result.

PRICE, J., filed a concurring opinion.

PRICE, J., concurring opinion.

I agree with the Court that the court of appeals erred in ruling on the admissibility of the expert testimony in this case without considering the appellant's motion to strike and the evidence he adduced in cross-examination, for the reasons the Court gives in its opinion. However, rather than address that ultimate question of admissibility, as the Court goes on to do, I would remand the cause to the court of appeals to resolve that issue in the first instance. *See, e.g., Lee v. State,* 791 S.W.2d 141, 142 (Tex.Crim.App.1990) ("In our discretionary review capacity we review 'decisions' of the courts of appeals.") That court should be the first to address the merits of the appellant's argument, taking into consideration all of the relevant evidence as determined by this Court. Because the Court does not remand the cause, I concur.