

**NUMBER 13-10-00216-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

HERIBERTO SAENZ,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                  Appellee.

**On appeal from the 347th District Court
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Vela
Memorandum Opinion by Justice Garza**

A Nueces County jury convicted appellant, Heriberto Saenz, of one count of murder, a first-degree felony, and three counts of aggravated assault, a second-degree felony. *See* TEX. PENAL CODE ANN. § 19.02 (Vernon 2003); *id.* § 22.02 (Vernon Supp. 2010). Saenz was sentenced to seventy years' imprisonment for the murder count and twenty years' imprisonment for each of the aggravated assault counts, with the

sentences ordered to run concurrently. By a single issue on appeal, Saenz argues that the trial court abused its discretion by permitting certain expert testimony and that the error affected Saenz's substantial rights. We affirm.

## I. BACKGROUND

On the evening of September 30, 2009, a group of people were gathered outside a residence located at 1112 Sabinas Street in Corpus Christi, Texas. At approximately 11:00 p.m., a red truck drove past the residence. Using a firearm, the driver of the truck shot ten or more rounds of ammunition into the crowd, killing one woman, Claryssa Silguero, and injuring three men. One of the injured men, Jerry Gonzalez, testified that Saenz was the driver of the truck. Several other witnesses testified that the shooting took place but could not identify the truck's driver. The firearm used in the shooting was never recovered.

One witness, Heather McCracken, testified that she called Saenz between 10:00 and 11:00 on the night in question and that Saenz told her "that he thinks that he was going to go hit up the Quare hood," referring to La Quarenta, the neighborhood where the shooting took place. Another witness, Bo Villanueva, testified that Saenz admitted to the shooting while in jail.[1] Uncontroverted testimony by Detective Guadalupe Rodriguez of the Corpus Christi Police Department established that Saenz was a member of Suicidal Barrios, a street gang.

The State also presented evidence regarding calls made by Saenz on his cell phone that evening. Raymond McDonald, a legal compliance officer employed by T-Mobile, Saenz's cell phone service provider, testified that he is a "custodian of records

---

[1] In his defense, Saenz called a witness, Mario Rocha, who testified that Villanueva said he was going to lie about Saenz's admission to the shooting.

2

for cell phone records dealing with [Saenz's] cell phone number." McDonald authenticated, and the trial court admitted into evidence without objection, records for Saenz's cell phone account on the date of the shooting, as well as records for certain cell towers and call detail information for those towers.

The State then called Detective Ben Tead of the Corpus Christi Police Department. Outside the presence of the jury, Detective Tead testified that he has an associate's degree in criminal justice and "ha[s] attended several schools in investigative techniques put on by the [Public Agency Training Council] and also by Texas [Department of Public Safety] and also considerable on-the-job training." He stated that he is certified by the Texas Commission on Law Enforcement Officer Standards and Education and that he has received specialized training in "cell phones and their usage." Specifically, Detective Tead testified that he attended a three-day course in March of 2009 focusing on "isolating and identifying cellular towers to be used to track individuals, actually track cell phones and the location, physical location, from which they were used." Detective Tead explained that cell phone companies systematically keep records of (1) the locations of the various towers that transmit and receive their signals, and (2) "what cellular tower and what sector on that cellular tower a call was first placed to and what cellular tower and sector on that cellular tower was last communicated with by that cellular device."[2] Detective Tead acknowledged that he

---

[2] In his testimony before the jury, Detective Tead elaborated on what a cell phone provider's records typically show:

> What we are going to see on our records is the first tower the cell phone communicates with and the last tower. Now let's say I am making a phone call when I start here in Corpus Christi and stay on that phone call all the way to San Antonio, two hours, whatever it is. We are going to know the tower which we made the first initiation of that phone call and the tower that I ended the phone call at. We are not going to know which towers [I] hit on the way through. It is just not kept in the cell companies['] records.

3

had never before given an opinion in court "regarding information obtained from cell phones or cell phone towers" but that he has performed analyses on such records some twelve times previously.

Over defense counsel's objection, the trial court qualified Detective Tead as an expert to testify as to the location of Saenz's cell phone at the time of the shooting "based on the calls and the data that w[ere] provided by T-Mobile." *See* TEX. R. EVID. 702. Detective Tead then testified before the jury that, at Detective Rodriguez's request, he reviewed the T-Mobile records that were previously authenticated by McDonald and admitted into evidence. He also obtained records from T-Mobile listing the global positioning system ("GPS") coordinates for all towers located in Texas. The records showed that a thirty-second call was placed at 10:32 on the evening in question from Saenz's cell phone to a cell phone registered in the name of Anthony Curiel. Detective Tead stated that Curiel "is a known member of the Suicidal Barrio gang." The prosecutor then asked:

> Q. [Prosecutor]   Now were you able to determine the tower usage that we can associate with the phone [call]?
>
> A. [Detective Tead]   Yes. This tower is located—the GPS coordinates place it on Leopard, near Airport Road or—yes, Airport Road.
>
> Q.   Were you able to determine which particular part of the tower was used to complete that call?
>
> A.   Yes. It was sector two. The call started and ended in sector two of cellular tower with a [location area code] of 9905 and a cellular tower I.D. of 40702 which was the cellular tower off of Leopard [S]treet. Sector two covers a serviceable area which includes the location of the murder.

Detective Tead further testified that some ten other calls were made or received by

4

Saenz's cell phone that evening, including four calls to and from Rebecca Mills, who was identified as Saenz's girlfriend, and two calls placed to other Suicidal Barrios gang members. The calls which were made at or around the approximate time of the shooting were associated with towers located near 1112 Sabinas Street. According to Saenz, "[i]n essence, [Detective] Tead testified that [Saenz]'s cell phone was at or near the crime scene at the time of the shooting."

The jury convicted Saenz on all counts and this appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's admission of evidence for abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). Texas Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. The trial court's task in assessing admissibility under Rule 702 "is to determine whether the testimony is sufficiently reliable and relevant to help the jury in reaching accurate results." *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). "Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case." *Davis v. State*, 313 S.W.3d 317, 350 (Tex. Crim. App. 2010) (citing *Rodgers v. State*, 205 S.W.3d 525, 527-28 (Tex. Crim. App. 2006)). For this reason, appellate courts rarely disturb the trial court's determination that a specific witness is or is not qualified to testify as an expert.

*Rodgers*, 23 S.W.3d at 27, n.9 ("The question of whether a witness offered as an expert possesses the required qualifications rests largely in the trial court's discretion. Absent a clear abuse of that discretion, the trial court's decision to admit or exclude testimony will not be disturbed."). We will uphold the trial court's ruling unless it was outside the zone of reasonable disagreement. *Weatherred*, 15 S.W.3d at 542 (citing *Montgomery v. State*, 810 S.W.2d 372, 381 (Tex. Crim. App. 1990)).

The erroneous admission of expert testimony is non-constitutional error, and will therefore be reversible only if it affects the defendant's substantial rights. *Turner v. State*, 252 S.W.3d 571, 585 (Tex. App.–Houston [14th Dist.] 2008, pet ref'd) (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)); *see* TEX. R. APP. P. 44.2(b).

### III. ANALYSIS

In *Rodgers*, the Texas Court of Criminal Appeals set forth the following non-exclusive list of questions for appellate courts to consider when determining if a trial court abused its discretion in ruling on an expert witness's qualifications:

> First, is the field of expertise complex? The degree of education, training, or experience that a witness should have before he can qualify as an expert is directly related to the complexity of the field about which he proposes to testify. If the expert evidence is close to the jury's common understanding, the witness's qualifications are less important than when the evidence is well outside the jury's own experience. . . . Second, how conclusive is the expert's opinion? The more conclusive the expert's opinion, the more important is his degree of expertise. . . . And third, how central is the area of expertise to the resolution of the lawsuit? The more dispositive it is of the disputed issues, the more important the expert's qualifications are. If DNA is the only thing tying the defendant to the crime, the reliability of the expertise and the witness's qualifications to give his opinion are more crucial than if eyewitnesses and a confession also connect the defendant to the crime.

*Rodgers*, 205 S.W.3d at 528; *see Davis*, 313 S.W.3d at 350.

6

With respect to the first prong, the State argues that "interpreting the cell phone data and locating calls within a particular geographic area on a map based on the location of the cell towers used in those calls was not complex, but a relatively simple process." The State contends that the process employed by Detective Tead "appears to involve little more than understanding that cell phones generally connect to the nearest tower location and then applying that principle to facts supplied by the cell phone provider." We agree with that characterization of Detective Tead's testimony.

On the other hand, Saenz complains that Detective Tead "has minimal training and almost no experience. [He] has no Bachelor's Degree, has no background in cell phones or cell phone technology, has done no independent research in this area, has not published anything on the subject, has done minimal analyses, and has never before testified in court on the subject." Saenz compares Detective Tead's qualifications with those of a similar expert considered in *Wilson v. State*, 195 S.W.3d 193, 200-02 (Tex. App.–San Antonio 2006, no pet.). In that case, the San Antonio Court of Appeals found that the trial court did not abuse its discretion in admitting expert testimony by Crystal Danko, a Sprint employee whose duties included accessing customer records in order to provide tower locations. *Id.* at 201. Danko had a Bachelor's Degree in Criminal Justice and had testified in court multiple times regarding the tracking of cell phone calls. *Id.* Saenz argues that Detective Tead's "education, training, and experience cannot begin to compare" with that of Danko. *See id.* We disagree. Detective Tead's expert opinion was based on his analysis of records provided by T-Mobile and admitted into evidence without objection by defense counsel. Although the process involved in compiling the data is technically complex, the process

7

involved in reading and analyzing the data is not. Moreover, "[t]he degree of education, training, or experience that a witness should have before he can qualify as an expert is directly related to the complexity of the field about which he proposes to testify." *Rodgers*, 205 S.W.3d at 528. Because an analysis of cell phone records such as the one performed by Detective Tead is relatively simple, the required degree of education, training and experience was not extremely high. *See id.* Detective Tead's qualifications—four years' experience as a police officer, a three-day course in cell phone call tracking, and twelve times performing call tracking analyses—were sufficient to allow him to "assist the trier of fact to understand the evidence." TEX. R. EVID. 702; *see Kelly*, 824 S.W.2d at 572.

With respect to the second and third prongs under *Rodgers*, we find that Detective Tead's testimony was neither conclusive nor dispositive. Detective Tead did not purport to identify Saenz's precise whereabouts based on the cell phone records; rather, he merely explained that Saenz's cell phone was in the vicinity of the crime scene at the time of the shooting. Moreover, there was ample other evidence tying Saenz to the crime, such as Gonzalez's eyewitness testimony that Saenz was the shooter, as well as McCracken's testimony that Saenz told her that "he was going to go hit up" the neighborhood where the shooting took place.

We conclude that the trial court did not abuse its discretion in admitting Detective Tead's expert testimony. Having so found, we need not address whether Saenz's substantial rights were affected by the ruling. *See* TEX. R. APP. P. 47.1. We overrule Saenz's issue.

## IV. Conclusion

The judgment of the trial court is affirmed.


DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
17th day of February, 2011.