NUMBER 13-10-00216-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI – EDINBURG

                                                                                                                             

 

HERIBERTO SAENZ,                                                                    Appellant,

 

v.

 

THE STATE OF TEXAS,                                                               
Appellee.

                                                                                                                             

 

On appeal from the 347th
District Court

of Nueces County, Texas.

                                                                                                                             

 

MEMORANDUM OPINION

 

Before Justices
Garza, Benavides, and Vela

Memorandum Opinion by
Justice Garza

 

            A Nueces County jury
convicted appellant, Heriberto Saenz, of one count of murder, a first-degree
felony, and three counts of aggravated assault, a second-degree felony.  See
Tex. Penal Code Ann. § 19.02
(Vernon 2003); id. § 22.02 (Vernon Supp. 2010).  Saenz was sentenced to
seventy years’ imprisonment for the murder count and twenty years’ imprisonment
for each of the aggravated assault counts, with the sentences ordered to run
concurrently.  By a single issue on appeal, Saenz argues that the trial court
abused its discretion by permitting certain expert testimony and that the error
affected Saenz’s substantial rights.  We affirm.

I. 
Background

            On the evening of
September 30, 2009, a group of people were gathered outside a residence located
at 1112 Sabinas Street in Corpus Christi, Texas.  At approximately 11:00 p.m.,
a red truck drove past the residence.  Using a firearm, the driver of the truck
shot ten or more rounds of ammunition into the crowd, killing one woman, Claryssa
Silguero, and injuring three men.  One of the injured men, Jerry Gonzalez,
testified that Saenz was the driver of the truck.  Several other witnesses
testified that the shooting took place but could not identify the truck’s
driver.  The firearm used in the shooting was never recovered.

            One witness, Heather
McCracken, testified that she called Saenz between 10:00 and 11:00 on the night
in question and that Saenz told her “that he thinks that he was going to go hit
up the Quare hood,” referring to La Quarenta, the neighborhood where the
shooting took place.  Another witness, Bo Villanueva, testified that Saenz
admitted to the shooting while in jail.[1] 
Uncontroverted testimony by Detective Guadalupe Rodriguez of the Corpus Christi
Police Department established that Saenz was a member of Suicidal Barrios, a
street gang.

            The State also presented
evidence regarding calls made by Saenz on his cell phone that evening.  Raymond
McDonald, a legal compliance officer employed by T-Mobile, Saenz’s cell phone
service provider, testified that he is a “custodian of records for cell phone
records dealing with [Saenz’s] cell phone number.”  McDonald authenticated, and
the trial court admitted into evidence without objection, records for Saenz’s
cell phone account on the date of the shooting, as well as records for certain
cell towers and call detail information for those towers.

The State then called Detective Ben
Tead of the Corpus Christi Police Department.  Outside the presence of the
jury, Detective Tead testified that he has an associate’s degree in criminal
justice and “ha[s] attended several schools in investigative techniques put on
by the [Public Agency Training Council] and also by Texas [Department of Public
Safety] and also considerable on-the-job training.”  He stated that he is
certified by the Texas Commission on Law Enforcement Officer Standards and
Education and that he has received specialized training in “cell phones and
their usage.”  Specifically, Detective Tead testified that he attended a
three-day course in March of 2009 focusing on “isolating and identifying
cellular towers to be used to track individuals, actually track cell phones and
the location, physical location, from which they were used.”  Detective Tead
explained that cell phone companies systematically keep records of (1) the
locations of the various towers that transmit and receive their signals, and
(2) “what cellular tower and what sector on that cellular tower a call was
first placed to and what cellular tower and sector on that cellular tower was
last communicated with by that cellular device.”[2] 
Detective Tead acknowledged that he had never before given an opinion in court
“regarding information obtained from cell phones or cell phone towers” but that
he has performed analyses on such records some twelve times previously.

Over defense counsel’s objection, the
trial court qualified Detective Tead as an expert to testify as to the location
of Saenz’s cell phone at the time of the shooting “based on the calls and the
data that w[ere] provided by T-Mobile.”  See Tex. R. Evid. 702.  Detective Tead then testified before the
jury that, at Detective Rodriguez’s request, he reviewed the T-Mobile records
that were previously authenticated by McDonald and admitted into evidence.  He
also obtained records from T-Mobile listing the global positioning system
(“GPS”) coordinates for all towers located in Texas.  The records showed that a
thirty-second call was placed at 10:32 on the evening in question from Saenz’s
cell phone to a cell phone registered in the name of Anthony Curiel.  Detective
Tead stated that Curiel “is a known member of the Suicidal Barrio gang.”  The
prosecutor then asked:

Q. [Prosecutor]           Now were you
able to determine the tower usage that we can associate with the phone [call]?

 

A. [Detective Tead]    Yes.  This
tower is located—the GPS coordinates place it on Leopard, near Airport Road
or—yes, Airport Road.

 

Q.                                  Were
you able to determine which particular part of the tower was used to complete
that call?

 

A.                                  Yes. 
It was sector two.  The call started and ended in sector two of cellular tower
with a [location area code] of 9905 and a cellular tower I.D. of 40702 which
was the cellular tower off of Leopard [S]treet.  Sector two covers a
serviceable area which includes the location of the murder.

 

Detective Tead further testified that
some ten other calls were made or received by Saenz’s cell phone that evening,
including four calls to and from Rebecca Mills, who was identified as Saenz’s
girlfriend, and two calls placed to other Suicidal Barrios gang members.  The
calls which were made at or around the approximate time of the shooting were
associated with towers located near 1112 Sabinas Street.  According to Saenz,
“[i]n essence, [Detective] Tead testified that [Saenz]’s cell phone was at or
near the crime scene at the time of the shooting.”

            The jury convicted Saenz
on all counts and this appeal followed.

II.  Standard
of Review and Applicable Law

            We review a
trial court’s admission of evidence for abuse of discretion.  Weatherred v.
State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  Texas Rule of Evidence 702
provides that “[i]f scientific, technical, or other
specialized knowledge will assist the trier of fact to understand the evidence
or to determine a fact in issue, a witness qualified as an expert by knowledge,
skill, experience, training, or education, may testify thereto in the form of
an opinion or otherwise.”  Tex. R. Evid.
702.  The trial court’s task in assessing admissibility under Rule 702 “is to
determine whether the testimony is sufficiently reliable and relevant to help
the jury in reaching accurate results.”  Kelly v. State, 824 S.W.2d 568,
572 (Tex. Crim. App. 1992).  “Because the possible spectrum of education,
skill, and training is so wide, a trial court has great discretion in
determining whether a witness possesses sufficient qualifications to assist the
jury as an expert on a specific topic in a particular case.”  Davis v. State,
313 S.W.3d 317, 350 (Tex. Crim. App. 2010) (citing Rodgers v. State, 205
S.W.3d 525, 527-28 (Tex. Crim. App. 2006)).  For this reason, appellate courts
rarely disturb the trial court’s determination that a specific witness is or is
not qualified to testify as an expert.  Rodgers, 23 S.W.3d at 27, n.9 (“The
question of whether a witness offered as an expert possesses the required
qualifications rests largely in the trial court's discretion.  Absent a clear
abuse of that discretion, the trial court’s decision to admit or exclude
testimony will not be disturbed.”).  We will uphold the trial court’s ruling unless
it was outside the zone of reasonable disagreement.   Weatherred, 15
S.W.3d at 542 (citing Montgomery v. State, 810 S.W.2d 372, 381 (Tex.
Crim. App. 1990)).

            The erroneous
admission of expert testimony is non-constitutional error, and will therefore
be reversible only if it affects the defendant’s substantial rights.  Turner
v. State, 252 S.W.3d 571, 585 (Tex. App.–Houston [14th Dist.] 2008, pet
ref’d) (citing Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App.
1998)); see Tex. R. App. P.
44.2(b).

III. 
Analysis

            In Rodgers,
the Texas Court of Criminal Appeals set forth the following non-exclusive list
of questions for appellate courts to consider when determining if a trial court
abused its discretion in ruling on an expert witness’s qualifications:

First, is the field of expertise
complex?  The degree of education, training, or experience that a witness
should have before he can qualify as an expert is directly related to the
complexity of the field about which he proposes to testify.  If the expert
evidence is close to the jury’s common understanding, the witness’s
qualifications are less important than when the evidence is well outside the
jury’s own experience. . . .  Second, how conclusive is the expert’s opinion?  The
more conclusive the expert’s opinion, the more important is his degree of
expertise. . . .  And third, how central is the area of
expertise to the resolution of the lawsuit?  The more dispositive it is of the
disputed issues, the more important the expert's qualifications are.  If DNA is
the only thing tying the defendant to the crime, the reliability of the
expertise and the witness's qualifications to give his opinion are more crucial
than if eyewitnesses and a confession also connect the defendant to the crime.

 

Rodgers, 205 S.W.3d at 528; see
Davis, 313 S.W.3d at 350.

With respect to the
first prong, the State argues that “interpreting the cell phone data and
locating calls within a particular geographic area on a map based on the
location of the cell towers used in those calls was not complex, but a
relatively simple process.”  The State contends that the process employed by
Detective Tead “appears to involve little more than understanding that cell
phones generally connect to the nearest tower location and then applying that
principle to facts supplied by the cell phone provider.”  We agree with that
characterization of Detective Tead’s testimony.

On the other hand,
Saenz complains that Detective Tead “has minimal training and almost no
experience.  [He] has no Bachelor’s Degree, has no background in cell phones or
cell phone technology, has done no independent research in this area, has not
published anything on the subject, has done minimal analyses, and has never
before testified in court on the subject.”  Saenz compares Detective Tead’s
qualifications with those of a similar expert considered in Wilson v. State,
195 S.W.3d 193, 200-02 (Tex. App.–San Antonio 2006, no pet.).  In that case,
the San Antonio Court of Appeals found that the trial court did not abuse its
discretion in admitting expert testimony by Crystal Danko, a Sprint employee
whose duties included accessing customer records in order to provide tower
locations.  Id. at 201.  Danko had a Bachelor’s Degree in Criminal
Justice and had testified in court multiple times regarding the tracking of
cell phone calls.  Id.  Saenz argues that Detective Tead’s “education,
training, and experience cannot begin to compare” with that of Danko.  See
id.  We disagree.  Detective Tead’s expert opinion was based on his
analysis of records provided by T-Mobile and admitted into evidence without
objection by defense counsel.  Although the process involved in compiling the
data is technically complex, the process involved in reading and analyzing the
data is not.  Moreover, “[t]he degree of education, training, or experience
that a witness should have before he can qualify as an expert is directly
related to the complexity of the field about which he proposes to testify.”  Rodgers,
205 S.W.3d at 528.  Because an analysis of cell phone records such as the one
performed by Detective Tead is relatively simple, the required degree of
education, training and experience was not extremely high.  See id. 
Detective Tead’s qualifications—four years’ experience as a police officer, a
three-day course in cell phone call tracking, and twelve times performing call
tracking analyses—were sufficient to allow him to “assist the trier of fact to understand
the evidence.”  Tex. R. Evid.
702; see Kelly, 824 S.W.2d at 572.

            With
respect to the second and third prongs under Rodgers, we find that
Detective Tead’s testimony was neither conclusive nor dispositive.  Detective
Tead did not purport to identify Saenz’s precise whereabouts based on the cell
phone records; rather, he merely explained that Saenz’s cell phone was in the
vicinity of the crime scene at the time of the shooting.  Moreover, there was
ample other evidence tying Saenz to the crime, such as Gonzalez’s eyewitness
testimony that Saenz was the shooter, as well as McCracken’s testimony that
Saenz told her that “he
was going to go hit up” the neighborhood where the shooting took place.

            We
conclude that the trial court did not abuse its discretion in admitting
Detective Tead’s expert testimony.  Having so found, we need not address
whether Saenz’s substantial rights were affected by the ruling.  See Tex. R. App. P. 47.1.  We overrule
Saenz’s issue.

 

IV. 
Conclusion

            The judgment
of the trial court is affirmed.

 

 

DORI CONTRERAS GARZA

Justice

 

Do
not publish.

Tex. R. App. P.
47.2(b)

Delivered
and filed the

17th
day of February, 2011.









[1]
In his defense, Saenz called a witness, Mario Rocha, who testified that
Villanueva said he was going to lie about Saenz’s admission to the shooting.





[2]
In his testimony before the jury, Detective Tead elaborated on what a cell
phone provider’s records typically show:

 

What we are going
to see on our records is the first tower the cell phone communicates with and
the last tower.  Now let’s say I am making a phone call when I start here in
Corpus Christi and stay on that phone call all the way to San Antonio, two
hours, whatever it is.  We are going to know the tower which we made the first
initiation of that phone call and the tower that I ended the phone call at.  We
are not going to know which towers [I] hit on the way through.  It is just not
kept in the cell companies[’] records.