

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|                      |   |                      |
|----------------------|---|----------------------|
| MOSES ALVAREZ,       | § | No. 08-11-00160-CR   |
|                      | § |                      |
| Appellant,           | § | Appeal from          |
|                      | § |                      |
| v.                   | § | 432nd District Court |
|                      | § |                      |
| THE STATE OF TEXAS,  | § | of Tarrant County, Texas |
|                      | § |                      |
| Appellee.            | § | (TC # 1126294D)      |
|                      | § |                      |

## **O P I N I O N**

Moses Alvarez appeals a judgment revoking community supervision. For the reasons that follow, we affirm.

### **FACTUAL SUMMARY**

A Tarrant County grand jury indicted Appellant for the offense of intoxication assault. *See* TEX.PENAL CODE ANN. § 49.07 (West 2011). In 2009, he waived his right to a jury trial and entered a negotiated plea of guilty. In exchange, the State recommended a fine of $1,500 and imprisonment for ten years, probated for ten years. The trial court accepted the plea, found Appellant guilty, and assessed his punishment in accordance with all of the terms of the plea bargain.[1]

---

[1] Appellant was convicted of intoxication manslaughter and placed on community supervision in a related case.

The terms and conditions of community supervision required Appellant to participate in electronic monitoring. The order required Appellant to have a SCRAM[2] device around his ankle which monitored his transdermal alcohol levels twenty-four hours a day. In December 2010, the State filed a motion to revoke Appellant's community supervision based on an allegation that he had violated this condition by tampering with the SCRAM device on November 4, 5, and 6, 2010. At the revocation hearing, Appellant stipulated that Recovery Healthcare, the company which operates the program and monitors the SCRAM devices, notified Appellant's probation officer that the company had received a "tamper signal" from the device on November 4, 5, and 6, 2010. After conducting a *Kelly-Daubert* hearing, the trial court determined that Vickers L. Cunningham, Sr., the chief operating officer of Recovery Healthcare, could testify as an expert witness on the SCRAM device and interpretation of the data it collected. The trial court admitted into evidence a report from Recovery Healthcare reflecting that Appellant's SCRAM device had been tampered with on those dates. Appellant testified at the hearing and denied tampering with the SCRAM device. The trial court found the allegations true, revoked Appellant's community supervision, and sentenced him to imprisonment for four years.

## ADMISSION OF EXPERT TESTIMONY

In Point of Error One, Appellant contends that the trial court abused its discretion by determining that Vickers L. Cunningham, Sr. was qualified to testify as an expert. Appellant does not argue that the expert testimony is not reliable or relevant.

### *Cunningham's Testimony about the SCRAM Device*

Cunningham is the chief operating officer for Recovery Healthcare Corporation. He previously served as a criminal district judge in Dallas County from 1995 through 2006 and he was the first Texas judge to use SCRAM when it became available in 2003. Because there was

---

[2] SCRAM is an acronym for Secure Continuous Remote Alcohol Monitor.

no formal training available at that time, he learned about the technology and the device from the owner and the inventor. After Cunningham left office, he became a principal at Recovery Healthcare. Cunningham does not have a degree in science or applied science. He has testified as an expert witness regarding the SCRAM device in both state and federal courts on many occasions.

Cunningham explained that the SCRAM device is based on a valid scientific theory, namely, that transdermal elimination of alcohol occurs by any human being who consumes it. Hundreds of studies have been made since the 1930's validating this scientific theory. Approximately 1 percent of the alcohol consumed by a person is eliminated through the epidermis and the remainder is excreted through the breath and urine. The SCRAM device measures the alcohol being excreted by the skin by drawing air into the sample chamber where it goes across the fuel cells and electric current is registered. The device draws the same amount of air into the chamber each time so it is a relative quantitative analysis. A sample is drawn into the chamber every thirty minutes so an alcohol absorption and elimination curve can be drawn allowing Recovery Healthcare to exclude environment stimulants such an a hand sanitizer containing alcohol.

The device also has anti-tampering measures. First, the device measures temperature to ensure it is on a person as opposed to being on an inanimate object. Second, the device uses an infrared sensor to verify that the device has not been obstructed by some object or substance. Cunningham conducts training for judges, probation officers, prosecutors, and defense lawyers. During those training sessions, he places a SCRAM device on individuals and demonstrates what the device can and cannot do. The infrared (IR) sensor is located at the top of the device where the sample is drawn into the chamber and it shoots a beam of light which bounces off of the skin

and is received back at the device's IR receiver. The device measures the reflectivity of the skin. When the device is first placed on the client, the IR sensor establishes an initial baseline reading for the client. If an individual places anything between the device and the skin in an effort to tamper with it, the infrared signature measured by the device will be altered. Cunningham explained that people had tried multiple methods of tampering with the device such as placing cellophane or chicken skin over the skin near the device but the infrared sensor would detect the difference in the infrared signature. The device records the transdermal alcohol content, the temperature, and the IR voltage on an internal flash drive, and transmits the data to Recovery Healthcare by means of a modem at a designated time each day. The data can also be transferred from the device manually.

Cunningham testified about State's Exhibit 5, the report created by Recovery Healthcare related to the SCRAM device worn by Appellant during the time in question. The report included a graph depicting the TAC, temperature, and IR voltage over a three-day period beginning on November 4, 2010 at 6:00 a.m. and concluding at midnight on November 6, 2010. The IR data showed a significant variance from the baseline and outside of the normal range beginning on the evening of November 4, 2010 and continuing through November 6, 2010. In Cunningham's opinion, the data collected by the device showed that something was placed between the unit and Appellant's skin that prevented the device from taking an accurate sample. Cunningham reviewed the data for a two-week period both before and after the tampering event and concluded that the device was working properly. *Relevant Law and Standard of Review*

A trial judge has substantial discretion is determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case. *Vela v. State*, 209 S.W.3d 128, 136 (Tex.Crim.App. 2006). Accordingly, we review a trial

court's ruling on the admissibility of expert testimony for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex.Crim.App. 2011); *Jessop v. State*, 368 S.W.3d 653, 666 (Tex.App.--Austin 2012, no pet.). When a trial judge determines that a witness is or is not qualified to testify as an expert, appellate courts rarely disturb that determination. *Vela*, 209 S.W.3d at 136; *Jessop*, 368 S.W.3d at 666. We will uphold the trial court's decision as long as it lies within the zone of reasonable disagreement. *Tillman*, 354 S.W.3d at 435.

The Texas Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

TEX.R.EVID. 702. Before admitting expert testimony under Rule 702, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case. *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex.Crim.App. 2006). These three conditions are commonly referred to as qualification, reliability, and relevance. *Vela*, 209 S.W.3d at 131. In this appeal, Appellant is challenging only the first condition, i.e., qualification.

The Court of Criminal Appeals stated in *Vela* that qualification is a two-step inquiry. *Vela*, 209 S.W.3d at 131. A witness must have a sufficient background in a particular field, but a trial judge must also determine whether that background goes to the very matter on which the witness is to give an opinion. *Id.* The second step focuses on the "fit" between the subject matter at issue and the expert's familiarity with that subject matter. *Id.* at 133. "Fit" is often thought of as a component of reliability and relevance, but it is also a component of qualification

inquiry.  *Id.*  The expert's background must be tailored to the specific area of expertise in which the expert desires to testify.  *Id.*

Appellate courts consider three criteria in examining whether a trial court has clearly abused its discretion in ruling on an expert's qualifications.  *Rodgers*, 205 S.W.3d at 528.  First, is the field of expertise complex? The degree of education, training, or experience that a witness should have is directly related to the complexity of the field about which he proposes to testify.  *Id., citing Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996).  Second, how conclusive is the expert's opinion?  The more conclusive the expert's opinion, the more important is his degree of expertise.  *Rodgers*, 205 S.W.3d at 528.  Third, how central is the area of expertise to the resolution of the lawsuit?  The more dispositive it is of the disputed issues, the more important the expert's qualifications are.  *Id.*

With respect to the first criteria, the field about which Cunningham testified is not as complex as DNA analysis, but it is more complex than latent fingerprint analysis.  Second, Cunningham's opinion regarding interpretation of the data collected by the SCRAM device was conclusive in that he testified a tampering event occurred on the dates in question.  Regarding the third criteria, Cunningham's expertise was central to resolution of the disputed issue before the trial court, namely, whether Appellant violated the term of probation by tampering with the SCRAM device.  Thus, the record must show that Cunningham has a significant degree of expertise with respect to the SCRAM device and interpretation of the data it collects.

Cunningham does not have formal training as a scientist but he demonstrated an understanding of the scientific theories involved with the device, how those theories are applied through operation of the SCRAM device, and proper interpretation of the data collected by the device.  That knowledge has been acquired through study, training, and experience.  Appellant

tested Cunningham's knowledge about the device and interpretation of the data through pointed cross-examination and Cunningham provided clear and detailed answers to those questions. Based on the record before us, we conclude that the trial court did not abuse its discretion by finding that Cunningham was qualified to testify as an expert witness. Point of Error One is overruled.

## RULE 403

In Point of Error Two, Appellant complains that Cunningham's testimony was inadmissible under TEX.R.EVID. 403. The State responds that Appellant waived this issue because he failed to make a Rule 403 objection in the trial court. We agree.

Evidentiary error must be preserved by making a proper objection and securing a ruling on that objection. TEX.R.APP.P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex.Crim.App. 2002); *Peralta v. State*, 338 S.W.3d 598, 609 (Tex.App.--El Paso 2010, no pet.). A proper objection is one that is specific and timely. *Wilson*, 71 S.W.3d at 349; *Peralta*, 338 S.W.3d at 609. Appellant asserts in his brief that he made an objection based on Rule 403 but he does not indicate where in the record that objection can be found. We have reviewed the clerk's record and reporter's record and have been unable to find an instance where Appellant made a timely and specific objection to the expert testimony based on Rule 403. Accordingly, we conclude that the complaint has not been preserved. Point of Error Two is overruled. The judgment of the trial court is affirmed.

April 24, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating

(Do Not Publish)