NUMBER 13-10-00383-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI -
EDINBURG 


                                                                                                                     


 

ERNEST PRICE,         
                                                                       Appellant,

 

v.

 

THE STATE OF TEXAS,                         
                             Appellee.

                                                                                                                     
  

 

On appeal from the 94th
District Court 

of Nueces County,
Texas.

 
                                                                                                                    

 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Benavides  

Memorandum Opinion by
Justice Rodriguez

                                                                                                                                    

Appellant Ernest Price challenges his
conviction after a bench trial for burglary of a habitation, a second-degree
felony.  See Tex. Penal Code Ann.
§ 30.02 (a)(1), (c)(2) (West 2003).  By one issue, Price argues that the
evidence was legally and factually insufficient to support his conviction.  We
affirm.

I. 
Background

 

            Price was indicted as follows:  "on or
about December 16, 2009, in Nueces County, Texas, [Price] did then and there,
with intent to commit theft, enter a habitation, without the effective consent
of Michelle Ayala, the owner thereof . . . ."  The indictment also stated
that Price had been previously convicted of two felonies.  Price pleaded not
guilty, and the case was tried before the court.

            At the bench trial, the State presented the
following testimony.  First, Ayala testified that on the morning of December
16, 2009, she returned home from taking her son to school and discovered
someone in her house.  Ayala testified that she glimpsed the intruder through
the door to her daughter's bedroom and that the intruder was male and wearing a
black shirt and khaki shorts.  She could not say for certain that the intruder
was Price, but stated that Price matched the intruder's build, height, and
race.  After glimpsing the intruder through the door, Ayala went back out the
front door, called 9-1-1, and waited on the front sidewalk for the police to
arrive.  When the police arrived, Ayala waited outside while they searched the
house, and when no one was found in the house, Ayala went inside with the
police and discovered that her daughter's television had been moved from its
stand to the bed and that her daughter's Xbox and some games were missing.  The
window in her son's bedroom was open, the screen was "busted," and it
appeared to Ayala as if someone had "busted" out of that window. 
Ayala testified that it had been raining that morning and that her backyard was
muddy.  When the police returned the items they eventually found with Price in
a search later that morning, Ayala identified them as her daughter's Xbox,
games, and High School Musical wallet.  Ayala testified that her backyard
bordered an apartment complex and that, if one were to jump over her back
fence, he would land in the apartment complex parking lot.

            Shakema Hatton testified next.  She testified
that she lives in the Northside Manor Apartments, which are situated behind
Ayala's house.  Hatton knows Price from around the neighborhood.  On the
morning of December 16, 2009, Price came to her apartment and asked if he could
leave an Xbox and some games with her.  When Price was leaving Hatton's
apartment, the police arrived.  Hatton saw the police recover a wallet from
Price.

            Melvin Goce, an officer with the Corpus
Christi Police Department (CCPD), was dispatched to the burglary at Ayala's
house.  Officer Goce testified that the side door to Ayala's house was kicked
in and the back window was open.  Officer Goce testified that it was muddy at
Ayala's house.  Officer Goce radioed a description of the stolen items—the Xbox
and games—to the officers searching for the intruder.  Officer Goce testified
that he eventually went to the apartment where Price was found and located the
Xbox and games there.  Price made no statements or comments to Officer Goce
after his arrest.  Officer Goce and his trainee, CCPD Officer Elizabeth Leal,
drove Price to the processing center to be booked.  

            CCPD Officer Jeff Davis testified that he was
also dispatched to the burglary but traveled directly to Northside Manor
Apartments to search for the suspect.  Officer Davis testified that he followed
a set of muddy footprints that started in Ayala's backyard through the
apartment complex and that the footprints ended at a third-floor apartment
where Price was discovered.  Officer Davis observed a wallet being recovered
from Price; he testified that it was a colorful little girl's wallet with
"something like" a cartoon on it.  Officer Davis testified that
Price's shoes were muddy when he was arrested and that the tread on his shoes
was similar to the tread in the footprints he followed.  Officer Davis then
went to Ayala's house, where he also noticed that the door had been kicked in. 
Officer Davis looked out the back bedroom window and noted that there were
footprints originating from directly below the window and that those footprints
were the same ones he followed through the apartment complex.[1]

            CCPD Officer Robert Pena testified that when
he arrived at Ayala's house, he noticed the screen was off the back window and
supposed that the burglar left through that window.  Officer Pena testified
that there were footprints outside that window that led to Ayala's back fence
that bordered the apartment complex parking lot.  The footprints traveled from
the window, through the backyard, and then continued on the other side of the
fence in the complex parking lot.  Officer Pena then drove around to the
apartment complex and followed the footprints up to the apartment where the
other officers had already discovered Price.  Officer Pena recovered a black
High School Musical wallet from Price, which he described as "[a] little
girl or boy's wallet."

            Finally, Officer Leal, who was Officer Goce's
trainee at the time of the burglary investigation, testified that she and
Officer Goce were the first to arrive at the scene.  Ayala told Officer Leal
that the burglar was wearing "all black."  With Ayala's assistance,
they determined that the Xbox and games were missing from Ayala's daughter's
room.  Officer Leal determined that "[t]he east back door" was the point
of entry because "[i]t was kicked in" and that "[t]he west back
window was the exit point because it was open and she "saw a footprint
outside the window."  Officer Leal then went to the apartment where Price
was found and discovered the Xbox and games there.

            At the conclusion of the evidence, the trial
court convicted Price of the indicted offense and sentenced him to twenty-five
years' incarceration in the Institutional Division of the Texas Department of
Criminal Justice.  This appeal followed.

II. 
Standard of Review and Applicable Law

 

            Although Price challenges both the legal and
factual sufficiency of the evidence, in light of the Texas Court of Criminal
Appeals' 2010 opinion in Brooks v. State, we will conduct only a legal
sufficiency review.  See 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).  Brooks
held that there is "no meaningful distinction between
the . . . legal-sufficiency standard and the . . . factual-sufficiency
standard, and these two standards have become indistinguishable."  Id.
at 902.  A legal sufficiency standard is "the only standard that a
reviewing court should apply in determining whether the evidence is sufficient
to support each element in a criminal offense . . . ." 
Id. at 912.

            When conducting a legal sufficiency review, a
court must ask whether "any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt"—not whether
"it believes that the evidence at the trial established guilt beyond a
reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 318-19
(1979).  A legal sufficiency analysis requires the court to view all of the
evidence in "a light most favorable to the verdict and to determine
whether a rational trier of fact could have found all of the essential elements
of the crime beyond a reasonable doubt."  Id.; see Laster v.
State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).  The trier of fact is
the sole judge of the facts, the credibility of the witnesses, and the weight
given to testimony.  Tex. Code Crim.
Proc. Ann. art. 38.04 (West 1979); Beckham v. State, 29 S.W.3d
148, 151 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).  We do not
reevaluate the weight or credibility of the evidence, nor do we substitute our
own conclusions for the trier of fact.  King v. State, 29 S.W.3d 556,
562 (Tex. Crim. App. 2000) (en banc).  Instead, we resolve any inconsistencies
in the evidence in favor of the final judgment and consider whether the jury
reached a rational decision.  Curry v. State, 30 S.W.3d 394, 406 (Tex.
Crim. App. 2000).

            Legal sufficiency is measured by the elements
of the offense as defined by a hypothetically correct jury charge.  Villarreal
v. State, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  "Such a charge is one that
accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State's burden of proof or unnecessarily restrict
the State's theories of liability, and adequately describes the particular
offense for which the defendant was tried."  Villarreal, 286 S.W.3d
at 327; see Malik, 953 S.W.2d at 240.  As indicted in this case, a
person is guilty of burglary of a habitation if, "without the effective consent
of the owner, the person . . . enters a habitation . . . with
intent to commit . . . theft . . . ." 
Tex. Penal Code Ann. §
30.02(a)(1).  

            "Circumstantial evidence is as probative
as direct evidence in establishing the guilt of the actor, and circumstantial
evidence alone can be sufficient to establish guilt."  Hooper v. State,
214 S.W.3d 9, 13 (Tex. Crim. App. 2007); see Kuciemba v. State, 310
S.W.3d 460, 462 (Tex. Crim. App. 2010).  "'[T]he standard of review on
appeal is the same for both direct and circumstantial evidence cases.'"  Kuciemba,
310 S.W.3d at 462 (quoting Guevara v. State, 152 S.W.3d 45, 49 (Tex.
Crim. App. 2004)).  Further, the law does not require that each fact
"point directly and independently to the guilt of the appellant, as long
as the cumulative effect of all the incriminating facts is sufficient to
support the conviction."  Hooper, 214 S.W.3d at 13.  So long as
"the verdict is supported by a reasonable inference, it is within the
province of the fact[]finder to choose which inference is most
reasonable."  Laster, 275 S.W.3d at 323.

III. 
Discussion

 

            By his sole issue, Price argues that the
evidence was insufficient to support his conviction.  Specifically, Price
argues that:  his possession of the stolen items alone does not prove his
guilt; the testimony regarding the muddy footprints was too "weak" to
pinpoint Price as the perpetrator; and, generally, that the State's case
"consist[ed] of nothing more than circumstantial evidence."

            First, "a defendant's unexplained
possession of property recently stolen in a burglary permits an inference that
the defendant is the one who committed the burglary."  Rollerson v.
State, 227 S.W.3d 718, 725 (Tex. Crim. App. 2007) (citations omitted). 
There was no evidence at trial explaining Price's possession of the Xbox,
games, and High School Musical wallet that Ayala identified as her daughter's
possessions.  And without such an explanation, we cannot agree with Price that
his possession of those items did not permit the trial court to infer that he
was the one that committed the burglary of Ayala's house.  See id.

            Second, the muddy footprints were strong
circumstantial evidence of Price's guilt.  The testimony by multiple officers
established that a set of tracks ran directly from Ayala's back window, through
her back yard, continued over the fence and into the apartment complex, and
then through the complex up to the apartment where Price was discovered. 
Although the State did not call any experts to testify about the footprints, we
conclude that the subject was appropriate to be established by the lay
testimony of the police officers who conducted the search for the burglary
suspect.  See Tex. R. Evid.
701; see also Rodgers v. State, 205 S.W.3d 525, 532 (Tex. Crim. App.
2006) (noting that lay witness testimony about footprints or tracks is
generally admissible).  Moreover, the fact finder is permitted to "use
common sense and apply common knowledge, observation, and experience gained in
ordinary affairs when giving effect to the inferences that may be reasonably
drawn from the evidence," which is what we presume the trial court did
here in crediting the officers' testimony.  See Rodriguez v. State, 191
S.W.3d 428, 437 (Tex. App.—Corpus Christi 2006, pet. ref'd) (citation
omitted).  We are thus unpersuaded by Price's argument that this evidence was
too weak to support his conviction.

            Third, contrary to Price's apparent
contention that the State's circumstantial evidence alone was insufficient to
prove his guilt, it is well-established that a conviction can be supported
solely by circumstantial evidence because it is as probative as direct evidence
under the law.  See Kuciemba, 310 S.W.3d at 462; Hooper,
214 S.W.3d at 13.  Here, as described above, there was ample circumstantial
evidence connecting Price to the crime.  Price's unexplained possession of the
stolen goods, the muddy footprints leading from Ayala's home to the apartment
where Price was found by police, and Hatton's testimony that Price asked her to
hold an Xbox and some games at her apartment shortly after the burglary
permitted the fact finder to infer that Price was the person who committed the
burglary.  This evidence combined with Ayala's description of the burglar's
clothes, height, build, and race—descriptions that matched Price's appearance
at the time he was apprehended shortly after the burglary was reported—were
sufficient to prove that Price committed the burglary.[2]

            Viewing the foregoing in the light most
favorable to the verdict, we cannot conclude that the trial court was
irrational in determining beyond a reasonable doubt that Price entered Ayala's
habitation with the intent to commit theft.  See Jackson, 443
U.S. at 318-19; see also Tex.
Penal Code Ann. § 30.02(a)(1).  Thus, the evidence supporting Price's burglary
conviction was legally sufficient.  Price's sole issue is overruled.

IV. 
Conclusion

 

            We affirm the judgment of the trial court.

                                                                                                             NELDA
V. RODRIGUEZ

                                                                                                             Justice

 

Do not publish.

Tex.
R. App. P.
47.2(b).

 

Delivered and filed
the 

2nd day of June, 2011.

                                                                                                                                                            









[1]
CCPD Officer Joe Harrison testified similarly regarding the footprints
originating "right outside" the back window of Ayala's house.





[2]
With regard to the identification of Price, Price contends that "no
eyewitness got a good look at whoever the burglar was" and that Ayala
"only testified that she got a general look at the burglar and was able to
tell nothing more than he was a black male and tall."  Based on this,
Price argues that the State failed to prove that Price "was actually the
burglar in this case."  We disagree that the evidence identifying Price
was insufficient.  As described above, there was ample circumstantial evidence
connecting Price to the burglary.  See Kuciemba v. State, 310 S.W.3d
460, 462 (Tex. Crim. App. 2010); Hooper v. State, 214 S.W.3d 9, 13 (Tex.
Crim. App. 2007).  Regardless, the trial court, as fact finder, was the sole
judge of the facts, the credibility of the witnesses, and the weight given to
the evidence, and we find no reason to disturb the conclusion of the trial
court in this case based on the evidence we have reviewed.  See Tex. Code Crim. Proc. Ann. art. 38.04
(West 1979); Beckham v. State, 29 S.W.3d 148, 151 (Tex. App.—Houston
[14th Dist.] 2000, pet. ref'd).