Opinion issued June 30, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00123-CR

———————————

Roberto Dianas, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 184th District Court

Harris County, Texas



Trial Court Case No. 1246855

 



 

MEMORANDUM OPINION

A jury
convicted appellant Roberto Dianas of capital murder, and the trial court
sentenced him to life imprisonment without parole.  See Tex. Penal Code Ann. §§ 19.02(b)(1),
19.03(a)(2), (a)(7)(A) (West 2011). 
Dianas brings three issues on appeal complaining that the trial court
(1) erred by prohibiting him from viewing juror information, (2) erred by denying
his motion to suppress his pretrial statement, and (3) abused its discretion by
permitting a witness to testify as a ballistics expert despite an alleged lack
of qualifications.

We affirm the judgment of the trial
court.

Background

Dianas was a member of the South
Side Locos gang.  He was indicted for the
capital murder of two rival gang members, Pablo Cayax and Roberto Gonzalez, in
a drive-by shooting.  See Tex. Penal Code Ann. § 19.03(a)(7)(A) (providing that a person commits capital murder if he
“murders more than one person during the same criminal transaction”).  Marcos
Velasco was also shot and injured, but he survived the shooting.  Several days after the crime, Dianas was
arrested and questioned at a police station. 
Lieutenant J. McGalin, the investigating officer, informed Dianas of his
constitutional and statutory rights against self-incrimination.  Dianas indicated that he understood his
rights, stated that he wished to waive them, and gave a recorded statement.

Before trial Dianas moved to
suppress evidence of his recorded statement, arguing that he was intoxicated at
the time it was made, and therefore he did not knowingly, intelligently, and
voluntarily waive his rights.  During the
suppression hearing, Dianas’s brother testified that on the day of the arrest, Dianas
was doing sheetrock and tile work with him and that Dianas was so intoxicated
that he could not complete his work.  McGalin
testified that, based on his training and experience, Dianas was not
intoxicated, did not appear confused or disoriented, did not have glassy eyes,
and did not smell of any intoxicant.  McGalin
further testified that Dianas made sense and sounded logical in giving his
statement.  He also noted that Dianas was
not deprived of any necessity, such as food or restroom breaks, was not
promised anything in exchange for his statement, did not ask for a lawyer or to
terminate the interview, and never stated that he was intoxicated or too
intoxicated to continue with giving his statement.  After watching the recorded statement and
listening to the arguments of counsel, the trial court denied Dianas’s motion
to suppress and specifically found: (1) the statement was made under voluntary
conditions; (2) Dianas was not intoxicated; (3) the warnings were properly
given; (4) Dianas understood the warnings; and (5) Dianas voluntarily waived his
rights and freely and voluntarily gave his statement.  

At trial, during voir dire, the
trial court became aware that Dianas was looking at the juror information
sheet.  The trial court asked Dianas’s
attorneys to take the juror information sheets away from him, observing that
the jury might be frightened to see a capital murder defendant looking at their
personal identifying information, such as their addresses and phone numbers.  

Later, over Dianas’s objection, the
trial court permitted the medical examiner to testify that the shots that
killed Cayax were fired from more than two feet away.  The medical examiner testified that she
received training from the Harris County Medical Examiner’s Office on
estimating the distance of gunshots.  She
explained about the evidence and factors she considers in assessing whether a
shot was fired from close range or from a distance.  She also testified that she had conducted at
least 700 autopsies and that she has examined gunshot wounds and estimated
distances every time she performed an autopsy on a victim of homicide or
suicide who suffered gunshot wounds.  The
trial court overruled Dianas’s objection that the medical examiner was not
qualified to give that opinion.

The jury convicted Dianas of
capital murder, the trial court assessed punishment at life in prison, and
Dianas appealed.  On appeal, he
challenges the trial court’s actions removing the juror information from him
during voir dire, denying his motion to suppress, and overruling his objection
to the medical examiner’s qualifications to testify about the distance from
which the shots were fired.

Analysis

I.                 
Juror information

In his
first issue, Dianas contends that the trial court erred by prohibiting him from
seeing information about the venire panel. 
During voir dire, the trial court asked to see counsel at the bench.

Trial Court:                    I didn’t see it because your
client is behind me. . . . He is looking at the jurors list.  You need to take those away from him.  

Defense Counsel:           Okay.

Defense Co-counsel:      I
didn’t realize.  Sorry, Your Honor.

Trial court:                     Yeah.  The rules don’t allow that.

Defense Co-counsel:      I
just took that.  

Trial court:                     Be sure to just discreetly
remove them.  You can tell him so-and-so
is a teacher or lives in the southwest part of town, but he is looking at their
addresses and phone numbers; and it will scare the jurors to death because it
is a capital case.  Thank you.  

Dianas did not object to the trial court’s
instruction to remove the juror information sheets from him.  Because he failed to object, this issue is
not preserved for appellate review.  See Tex.
R. App. P. 33.1(a); Saur v. State,
918 S.W.2d 64, 66 (Tex. App.—San Antonio 1996, no writ) (holding that appellant
waived issue pertaining to removal of juror information sheets by failing to
object at trial).

          Dianas
argues that the removal of the juror information sheets deprived him of a fair
trial and therefore may be raised for the first time on appeal.  The record indicates that his attorneys had
access to the juror information sheets and that the trial court instructed counsel
to give Dianas information about the jurors contained therein.  Counsel did not contend that he could not
communicate the information to his client. 
Nothing in the appellate record shows that Dianas was limited in the
amount of input he could provide to his lawyers pertaining to voir dire so as
to deprive him of an opportunity to participate in his own defense.  

          We
overrule Dianas’s first issue.

II.              
Admissibility of recorded statement

In his second issue, Dianas
contends that the trial court erred by denying his motion to suppress and by admitting
his recorded statement to police.  Dianas
argues that his waiver of his rights in making a statement to police was not
knowing, voluntary, or intelligent because he was intoxicated.

In reviewing the trial court’s
ruling on a motion to suppress evidence, we apply a bifurcated standard of
review.  Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Blake v. State, 125 S.W.3d 717, 722
(Tex. App.—Houston [1st Dist.] 2003, no pet.).  We give almost total deference to the trial
court’s determination of historical facts that depend on credibility, while we
conduct a de novo review of the trial court’s application of the law to those
facts.  Carmouche, 10 S.W.3d at 327.  The trial court is the sole judge of the
credibility of the witnesses and decides the weight to give their testimony. Villarreal v. State, 935 S.W.2d 134, 138
(Tex. Crim. App. 1996); Romero v. State,
800 S.W.2d 539, 543 (Tex. Crim. App. 1990).  We must sustain the trial court’s ruling if it
is reasonably supported by the record evidence and is correct under any theory
of law applicable to the case.  State v. Ross, 32 S.W.3d 853, 855–56
(Tex. Crim. App. 2000).

A defendant’s statement may be used
in evidence against him if the defendant made it freely and voluntarily and
without compulsion or persuasion.  Tex. Code Crim. Proc. Ann. art. 38.21 (West
2005).  However, no written statement
made by an accused as a result of custodial interrogation may be admissible
unless the accused “prior to and during the making of the statement, knowingly,
intelligently, and voluntarily waived” certain specified warnings against
self-incrimination.  Id. art. 38.22 § 2(a), (b) (West 2005).  A defendant may claim that his statement was
not freely and voluntarily made under several different theories: (1) general involuntariness;
(2) failure to warn against self-incrimination; or (3) the deprivation of due
process.  See Oursbourn v. State, 259 S.W.3d 159, 169 (Tex. Crim. App.
2008).  A statement that is “involuntary”
as a matter of constitutional law is also “involuntary” under Article 38.22 of
the Code of Criminal Procedure, but the converse is not necessarily true.  Id.

“The determination of whether a
confession is voluntary is based on an examination of the totality of
circumstances surrounding its acquisition.”  Wyatt v.
State, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000) (quoting Penry v. State, 903 S.W.2d 715, 744
(Tex. Crim. App. 1995)).  Intoxication is
one of many factors considered in determining whether a confession is voluntary,
but intoxication does not render a confession involuntary per se.  See Jones v. State, 944 S.W.2d 642, 651
(Tex. Crim. App. 1996); Paolilla v. State,
No. 14-08-00963-CR, 2011 WL 2042761, at *7 (Tex. App.—Houston [14th Dist.] May
26, 2011, pet. filed).  To render a
confession involuntary, the intoxication must render the defendant incapable of
making an independent, informed decision to make a statement.  Jones,
944 S.W.2d at 651; Paolilla, 2011 WL
2042761, at *7.  A statement may also be
involuntary “if there was official, coercive conduct of such a nature that any
statement obtained thereby was unlikely to have been the product of an
essentially free and unconstrained choice by its maker.”  See
State v. Terrazas, 4 S.W.3d 720, 723 (Tex. Crim. App. 1999) (quoting Alvarado v. State, 912 S.W.2d 199, 211
(Tex. Crim. App. 1995)).  

          In
this case, the trial court held a hearing and denied Dianas’s motion to
suppress his custodial statement.  The
trial court made findings of fact and conclusions of law regarding the
voluntariness of appellant’s recorded custodial statement,  see Tex. Code Crim. Proc. Ann. art. 38.22,
§ 6, and it implicitly found Lt. McGalin’s testimony credible.  The court explicitly found that (1) the
statement was made under voluntary conditions; (2) Dianas was not intoxicated;
(3) the warnings were properly given; and (4) Dianas understood the warnings.  The trial court thus concluded that Dianas
voluntarily waived his rights and freely and voluntarily gave his
statement.  

The record supports the trial
court’s findings and conclusions.  It
shows that Houston police officers lawfully arrested Dianas pursuant to a
warrant and transported him to the police station.  The record shows that Lt. McGalin advised Dianas
of his rights and that he waived those rights.  McGalin testified that Dianas was not promised
anything in exchange for his statement, he was not deprived of any necessity (such
as food or a restroom break), and he was not threatened.  Dianas did not ask for an attorney or to
terminate the interview.  He did not tell
the officers that he was intoxicated.

Dianas does not argue that his is a
case involving police coercion.  Rather,
he argues, essentially, that the trial court should have believed his brother,
who testified that he was intoxicated, and disregarded McGalin’s testimony,
which showed that he was not.  Our
standard of review requires nearly total deference to factual determinations
that depend on credibility.  See Carmouche, 10 S.W.3d at 327.  We conclude the evidence adduced at the
suppression hearing supports the trial court’s findings, and we hold that the
trial court properly applied the law to those facts in denying Dianas’s motion
to suppress.  We overrule Dianas’s second
issue.

III.          
Expert qualifications of medical examiner

In his third issue, Dianas contends
that the trial court abused its discretion by overruling his objection to the
medical examiner’s qualifications to testify about the distance from which
gunshots that killed the complainants were fired.

We review a trial court’s ruling on
the admissibility of expert testimony for an abuse of discretion.  Layton
v. State, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009); Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  A trial court’s determination of the
qualifications of a witness to testify as an expert is afforded great
deference.  Davis v. State, 313 S.W.3d 317, 350–51 (Tex. Crim. App. 2010); Rodgers v. State, 205 S.W.3d 525, 527–28
(Tex. Crim. App. 2006).  Such rulings
will rarely be disturbed by an appellate court. Vela v. State, 209 S.W.3d 128, 136 (Tex. Crim. App. 2006); Rodgers, 205 S.W.3d at 528–29 n.9.  As with other types of evidentiary rulings, we
will uphold the trial court’s decision unless it lies outside the zone of
reasonable disagreement.  Layton, 280 S.W.3d at 240 (citing Montgomery v. State, 810 S.W.2d 372, 380
(Tex. Crim. App. 1990)).

Rule 702 of the Texas Rules of
Evidence provides that “[i]f scientific, technical, or other specialized
knowledge will assist the trier of fact to understand the evidence or to
determine a fact in issue, a witness qualified as an expert by knowledge,
skill, experience, training, or education may testify thereto in the form of an
opinion or otherwise.”  Tex. R. Evid. 702.  The qualifications of an expert witness are
distinct from the reliability and relevance of the opinion testimony and,
therefore, they should be evaluated independently.  Vela,
209 S.W.3d at 131.  The evaluation of an
expert’s qualifications entails a two-step inquiry: “[a] witness must first
have a sufficient background in a particular field, but a trial judge must then
determine whether that background ‘goes to the very matter on which [the witness]
is to give an opinion.’”  Id. (quoting Broders v. Heise, 924 S.W.2d 148, 153 (Tex. 1996)).  To be qualified to give expert opinion
testimony, the witness “must possess some additional knowledge or expertise
beyond that possessed by the average person, but the gap need not necessarily
be monumental.”  Davis, 313 S.W.3d at 350.

          Luisa
Florez was trained as a pathologist and completed medical school in
Colombia.  She attended the Tulane and Baylor
medical schools, completed a neuropathology fellowship, and trained in
forensics at the Harris County Medical Examiner’s Office.  She testified that she had conducted
approximately 700 autopsies in her career. 
She conducted the autopsies on the two complainants in this case, Cayax
and Gonzalez. 

At trial, the prosecutor asked if
she had an opinion as to what caused Cayax’s death.  She testified that he died as the result of
multiple penetrating gunshot wounds, and she characterized his death as a
homicide.  The prosecutor then asked,
“Were these close range wounds or were they from a distance?”  Florez replied that they were “farther than 2
feet away.”  Dianas’s counsel objected “because
I don’t think she has been proven to be an expert in ballistics.”  The court did not rule on Dianas’s objection;
instead the judge asked the prosecutor if he wanted to lay a predicate.  

Florez then testified that part of
the training she received from the Harris County Medical Examiner’s Office was
to determine if the shots were fired at close range or from a distance based on
physical indications on the deceased’s body. 
She testified about her experience with gunshot wounds and estimating
distances, including the methods she uses to make such determinations.  With respect to Cayax’s wounds in particular,
she explained:  

If a gun is fired in contact
with the skin, it will leave marks on the skin.  Soot deposition, which is the unburned, fired,
and burned powder that deposits on the skin.  This decedent didn’t have any soot on his skin,
neither any gunshot powder residue on his clothing.  If the wound is near, it’s not in contact, but
it’s close, it will leave what we call stippling.  Stippling are some abrasions like red, brown
abrasions that are deposited around the wound. 
And this decedent did not have stippling on his skin or any other
marking on his clothing.

 

She also testified about other information that she
uses to determine whether gunshots were fired from a distance or at close
range.

One
is we take into account the police report, the pictures taken at the scene, and
we relied on those to make also interpretation of our wounds.  Because we examine the body as a whole, taking
into account like the circumstances, and the pictures on this decedent are
showing that they went through a car door and through a chair, and that’s why
we, in one of the wounds, we collected like a piece of foam that is the filling
of the chair.  I wouldn’t have known that
that was a piece of foam if I do not examine the pictures and talk to police.  So, that’s why we always get in touch with
police and reveal everything.  When the
bullet goes through what we call an intermediary target, that means there was something
between the decedent and the bullet.  The
wound can be what we can call atypical. So, it’s not a perfectly round entrance
wound with like a dry edge.  As the
bullet enters to a solid intermediary target, that bullet can fragment in
pieces and create adjacent satellite little entrances around.  And since the bullet is deformed, it’s not going
to be a perfectly round entrance wound.

 

Dianas’s counsel then
restated his objection, arguing that he didn’t think the proper predicate had
been laid for expert testimony in the area of ballistics, and the trial court
overruled his objection.  Florez later
testified that Gonzalez also suffered gunshot wounds from a distance of more
than two feet away.  On
cross-examination, Dianas’s counsel asked about her ballistics training, and
she testified that she could not estimate the caliber of the bullets used or
provide a more specific estimate of distance than to say the shots were fired
from more than two feet away. 

The record shows that Florez
was qualified by education, training, and experience in the field of forensic
pathology and was qualified to opine about the impact of gunshot wounds on a
deceased’s body.  Florez testified that
Cayax and Gonzalez were hit by gunshots fired from a distance of more than two
feet, based on her observations and analysis of the impact of the gunshot
wounds on their bodies.  Thus, her
qualifications and background went to the “very matter” on which she
testified.  See Vela, 209 S.W.3d at
131 (quoting Broders, 924 S.W.2d at
153).  We hold that the trial court did
not abuse its discretion in overruling Dianas’s objection to the medical
examiner’s qualifications to testify that the complainants were shot from over
two feet away.  We overrule Dianas’s
third issue. 

Conclusion

We affirm
the judgment of the trial court.

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel consists of Justices
Jennings, Bland, and Massengale.

Do not publish.   Tex. R. App. P. 47.2(b).