**Opinion filed February 28, 2014**



## In The

# Eleventh Court of Appeals

_____

## No. 11-12-00053-CR

_____

## ROBERT VALLAS BOOTH, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR38798**

### M E M O R A N D U M   O P I N I O N

Robert Vallas Booth, Appellant, pleaded guilty to the offense of intoxication manslaughter and to using or exhibiting a motor vehicle as a deadly weapon during the commission of the offense. He also pleaded true to the enhancement paragraph. The jury convicted Appellant and assessed his punishment at thirty

years' confinement and a $10,000 fine. The trial court sentenced him accordingly. Appellant challenges his punishment in three issues. We affirm.

*Background*

Appellant's pickup collided with another vehicle near Rankin Highway in Midland, causing both vehicles to hit a concrete pillar under the overpass. The collision resulted in the death of the driver of the other vehicle. The victim suffered massive blunt force trauma to her head, neck, chest, abdomen, pelvis, and extremities. Appellant's blood alcohol level was 0.16, two times the legal limit. Officer Ray Miller of the City of Midland Police Department testified that Appellant was driving at least 75 miles per hour in a 45 mile-per-hour zone and that he ran a red light at the intersection in which the collision occurred. A witness to the aftermath of the collision testified that there was nothing that he and some other men could do for the victim, but that they were able to pull Appellant out of his pickup—it was on fire and Appellant was unconscious.

Stephen Gibson, Detention Sergeant of the Midland County Sheriff's Office, testified as an expert on gang identification. He testified that Appellant was a member of the White Knights, a white supremacist gang that participated in criminal activity both in and out of prison. Two witnesses testified regarding the character of the victim and several witnesses testified as to Appellant's character. Appellant also testified.

*Admission of Expert Testimony*

In his first two issues, Appellant contends that the trial court abused its discretion when it admitted the expert testimony of Sergeant Gibson and Officer Miller. Appellant challenges Sergeant Gibson's qualifications as an expert as well as the reliability of his opinion. Appellant specifically contends that Sergeant Gibson was not qualified to testify regarding the White Knights and that his

opinion was unreliable because it was based on information Sergeant Gibson gathered in an internet search.

Rule 702 of the Texas Rules of Evidence provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. Before a trial court admits expert testimony, it must be satisfied that the following three conditions are met: (1) the witness qualifies as an expert because of his knowledge, skill, experience, training, or education regarding the subject matter; (2) the subject matter of the testimony is appropriate for expert testimony; and (3) the expert testimony will actually assist the factfinder in deciding the case. *Alvarado v. State*, 912 S.W.2d 199, 215–16 (Tex. Crim. App. 1995). These three conditions are commonly referred to as qualification, reliability, and relevance. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006).

Expert testimony may be appropriate even if the subject matter is within the comprehension of the average juror. *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006). "Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case." *Id.* at 527–28. To determine whether an opinion regarding a nonscientific subject matter is reliable, we look to whether the field of expertise is legitimate, whether the subject matter of the expert's testimony is within the scope of the field, and whether the expert's testimony properly relies upon and utilizes the principles involved in the field. *Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999). We review the trial court's ruling in light of what was

before the court at the time it made the ruling. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

Appellant argues that Sergeant Gibson was not qualified to testify regarding the White Knights because he had no personal knowledge of the White Knights and argues that Sergeant Gibson's opinion regarding the criminal activity of the White Knights was unreliable, because it was based solely on an internet search. Sergeant Gibson testified that he was a detention sergeant at the jail and a member of a gang unit. He focused on identifying gang members and learning about gangs. Sergeant Gibson verified gang affiliation by reading inmate correspondence, checking visitation logs, and checking for tattoos. During his basic training, he took four hours of classes on the organization and identification of gang members. He also attended two eight-hour conferences and a six-day conference regarding gang membership and identification. At the time of trial, Sergeant Gibson had been teaching jailers about gang affiliation for about two and one-half years. He had not testified as an expert regarding gang identification prior to this case.

As to the White Knights specifically, Sergeant Gibson testified that he learned about the gang through a general internet search. He also remembered seeing a one-page description of the White Knights in a book published by the Texas Department of Criminal Justice in the 1990s. Sergeant Gibson did not remember the White Knights as being one of the specific gangs discussed at his training or the conferences he later attended. He testified that according to his internet research, the White Knights was a white supremacist organization that was founded as a prison protection group. The organization had 100–200 members. He had read about cases of members being involved in criminal activities outside of the prison, but did not have any personal knowledge of those cases. Sergeant Gibson identified Appellant as a member of the White Knights based on several tattoos, including a tattoo that said, "White Knights." Sergeant Gibson also

testified that Appellant told another jailer that he was a sergeant in the White Knights.

Even if we assume that the trial court erred when it allowed Sergeant Gibson to testify as to the criminal activity of the White Knights, we cannot say that Appellant was harmed by the error. Pursuant to Rule 44.2(b), an error is not reversible error unless it affects a substantial right of the defendant. *See* TEX. R. APP. P. 44.2(b). A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). An accused's substantial rights are not affected by the erroneous admission of evidence if the court, after examining the record as a whole, has fair assurance that the error did not influence the jury or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

Although Sergeant Gibson testified that the White Knights had a history of participating in criminal activity both inside and outside of the prison, he did not testify as to any specific crime being committed or link Appellant to any criminal activity committed by the White Knights. In addition, Sergeant Gibson testified that Appellant did not have any disciplinary problems while in jail, nor did Appellant have any trouble with other inmates while in jail. Furthermore, Appellant testified that he had joined the White Knights for protection while he was in prison because there were a lot of fights, extortions, and rapes at the prison unit where he was assigned, and he was concerned for his safety. He explained that the organization started in prison but that it operated outside of prison as well. He confirmed that he was a sergeant and testified that members are required to protect one another. Appellant agreed that his gang would "take care of business" when there was a fight that involved the White Knights. Appellant's testimony confirmed that Appellant was a member of a prison gang. Based on his testimony

5

alone, the jury could have concluded that he was a member of an organization that was involved in criminal activity. Considering the record as a whole, we have a fair assurance that, even if the trial court erred when it allowed Sergeant Gibson to testify that the White Knights participated in criminal activity, the error did not influence the jury or had but a slight effect. *See id.* We overrule Appellant's first issue.

In his second issue, Appellant contends that the trial court abused its discretion when it allowed Officer Miller to testify as to the rate of speed the vehicles were traveling at the time of the collision and regarding traffic offenses committed by Appellant at or near the time of the collision. Appellant does not challenge Officer Miller's qualifications to testify as an expert.

During a hearing outside the jury's presence, Officer Miller testified that he was able to calculate minimum speeds but that, due to the dynamics of the crash, he could not calculate the actual speed that the vehicles were traveling. In order to calculate the speed of Appellant's pickup, Officer Miller relied on footage of the collision from a Wal-Mart surveillance video, his personal observations of the scene, and measurements that he took from the scene. Officer Miller testified that he could identify the location of Appellant's vehicle at two specific times on the video. He determined these two locations from two different camera angles. He was able to then measure the distance between the vehicle's two locations on the video by locating those same two locations on the actual road. Officer Miller said that he was able to calculate that Appellant was traveling at least 75 miles per hour when the collision occurred. His calculations were based on information he gathered from the video and from the measurements he took. There were no visible marks on the road that indicated that Appellant applied his brakes prior to the impact.

To calculate the speed of the victim's vehicle, Officer Miller measured the skid marks created by the victim's vehicle and plugged those measurements into the straight skid formula published by Texas A&M University in the accident reconstruction manuals that he received during his training. Officer Miller indicated that the formulas he used to calculate the speeds of the vehicles were mathematical formulas and that the only room for error was if the initial observations were wrong; "that's why I'm so careful to check my observations."

Officer Miller also testified that Appellant ran a red light at the intersection in which the collision occurred. He was able to determine that Appellant ran the red light by evaluating the continuous cycle of the traffic signals, calculating the amount of time each light remained a certain color, and calculating what color the light would have been when Appellant's vehicle entered the intersection.

At trial, defense counsel argued that there were too many unknowns and that the testimony would not assist the trier of fact because of its speculative nature. Appellant did not specifically identify what was unknown to Officer Miller or explain how his conclusion was speculative. On appeal, Appellant argues that the State failed to present any evidence that a video is the type of evidence normally relied upon by accident reconstruction experts and asserts that this type of evidence is too speculative to satisfy the requirements for admissibility under Rules 702 and 703 of the Texas Rules of Evidence. Appellant did not object under Rule 703 at trial; thus, he has waived his argument that Officer Miller's testimony was based on data not normally relied upon by accident reconstruction experts. *See* TEX. R. APP. P. 33.1.

As to whether Officer Miller's opinion was speculative and, thus, inadmissible under Rule 702, Appellant has failed to explain his argument. Appellant does not point to any unknown information that Officer Miller used to determine Appellant's minimum speed or to determine that Appellant ran a red

light. During his voir dire examination of Officer Miller, defense counsel asked Officer Miller how he was certain that the vehicle he observed in the video was the vehicle driven by Appellant. Officer Miller responded that there were no other vehicles that traveled along that path leading to the scene of the crash and so, although he could not identify any distinguishing marks on the vehicle, he knew that the vehicle was driven by Appellant. Officer Miller also indicated that the victim's vehicle could not be identified in the video. However, the driver of a tractor-trailer told Officer Miller that the victim was behind him at the intersection; both he and the victim were turning left at the light.

Although Officer Miller had to piece together information that he gathered from several different sources in order to determine the speeds of the vehicles and the color of the traffic signal at the time of the collision, it does not appear that his conclusions were based on any unknown information. Officer Miller specifically said that he could not testify as to the actual speed of Appellant's vehicle because there was no way to mathematically calculate how much speed and energy was lost when Appellant's vehicle struck the pillar. Based on Officer Miller's explanation of how he determined the rate of speed of the vehicles and the color of the traffic signals at the time of the collision, as well as the fact that the jury and the trial court were able to view the video as he explained his calculations, we cannot say that the trial court abused its discretion when it allowed Officer Miller to testify. We overrule Appellant's second issue.

*Admission of Photographs*

In his third issue, Appellant argues that the trial court erred when it admitted three photographs in violation of Rules 401, 402, and 403 of the Texas Rules of Evidence. The first photograph that Appellant complains of depicts the victim in her vehicle after the collision. It shows severe injuries to the victim's arm and abdomen, as well as extensive damage to her vehicle. The other photographs that

Appellant complains of depict the victim prior to autopsy. One is a view of the upper half of her body and shows severe injuries to her arm and abdomen, and the other photograph is a view of the lower half of her body and shows severe injuries to her legs.

Appellant recognizes that the State is entitled to present evidence of the offense even where he has pleaded guilty to the offense. He argues, however, that the photographs are not admissible to merely show the death of the victim, but must show something more in order to be relevant. And, even if relevant, he argues that the photographs should have been excluded because the probative value of the photographs was substantially outweighed by the danger of unfair prejudice. Specifically, Appellant argues that the photographs were unfairly prejudicial because they were cumulative and gruesome.

Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Relevant evidence is generally admissible. *See* TEX. R. EVID. 402. The photographs at issue here do not merely show the death of the victim, but also show the extent of the victim's injuries and the extent of the damage to her vehicle. Article 37.07 provides that evidence of the circumstances of the offense for which the defendant is being tried is relevant in the punishment phase of trial. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West 2013). The photographs depict the seriousness of the injuries and damage caused by Appellant when he committed the offense of intoxication manslaughter. Therefore, the photographs are relevant to show the jury the circumstances of the offense.

Rule 403 provides that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." TEX. R. EVID. 403. To determine whether the probative value of the photographs is substantially

outweighed by the danger of unfair prejudice, we consider several factors, including the number of exhibits offered, the gruesomeness of the photographs, how much detail is shown, the size of the photographs, whether they are in color or black and white, whether they are close-up, and whether the body depicted is clothed or naked. *Jones v. State*, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996). Here, the State offered six photographs that depicted the victim's injuries. Three of the photographs depicted the victim in her vehicle after the collision, and three of the photographs depicted the victim prior to autopsy. Each of the six photographs depicts a different view of the victim and shows the different injuries that she suffered. The State did not offer a large number of photographs, nor were the photographs it offered cumulative of the victim's injuries.

The three specific photographs that Appellant complains of are in color, are 8 ½ by 11 inches in size, and show blood and intestines protruding from the victim. The autopsy photographs depict the victim's nude body and show several large areas of her body where the tissue under her skin is visible, as if the skin had been peeled off her body. Part of her right arm appears to be missing and a bone is protruding out of her left leg. Her body is covered with bruises. Although all of the photographs are rather gruesome and the autopsy photographs depict the victim's nude body, they are not enhanced in any way and do not show any mutilation of the victim caused by the autopsy itself. *See Santellan v. State*, 939 S.W.2d 155, 172 (Tex. Crim. App. 1997) (holding autopsy photographs are generally admissible unless they depict mutilation of victim caused by autopsy itself); *Jones*, 944 S.W.2d at 652 (holding trial court did not abuse its discretion when it admitted detailed and somewhat gruesome photographs where photographs were not enhanced in any way). The photographs at issue reflect the fact and manner of the victim's death. While they are gruesome, they are no more gruesome than the injuries that Appellant inflicted upon the victim when he

committed the offense of intoxication manslaughter. *See Williams v. State*, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997) (photographs are no more gruesome than the facts of the offense itself). We cannot say that the trial court's decision to admit the photographs was outside the zone of reasonable disagreement. We overrule Appellant's third issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


February 28, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.