

# NUMBER 13-22-00123-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **CORALEE MACDONALD,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 36th District Court
### of Aransas County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Silva**
**Memorandum Opinion by Chief Justice Contreras**

Appellant Coralee Macdonald was convicted of driving while intoxicated (DWI), third or more offense, a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b)(2). She was sentenced to five years' imprisonment, with the sentence suspended and community supervision imposed for five years. On appeal, Macdonald argues by four issues that the trial court erred by: (1) failing to afford her ten days to

prepare for trial after the indictment was amended; (2) denying her motion for new trial; (3) admitting the judgments allegedly showing her prior DWI convictions as evidence; and (4) allowing expert opinion testimony by a forensic toxicologist. We affirm.

## I.   BACKGROUND

An Aransas County grand jury returned an indictment on May 27, 2021, alleging that: (1) Macdonald committed DWI on or about December 2, 2018; (2) Macdonald "was convicted of an offense relating to the operating of a motor vehicle while intoxicated" "on or about December 3, 1999, in cause number 99-7703-1 in the County Court at Law 1 of Nueces County"; and (3) Macdonald "was convicted of an offense relating to the operating of a motor vehicle while intoxicated" "on or about December 23, 2010, in cause number 1211276001 in the County Criminal Court 9 of Tarrant County, Texas."

The parties announced ready for trial on February 22, 2022, and a jury was selected. On February 24, 2022, as trial was set to begin, the prosecutor informed the trial court that "the State is going to abandon the last three numbers" of "the second cause number" listed for a prior DWI conviction in the indictment. The following colloquy then occurred:

| [Defense counsel]: | Judge, I did tell her I was going to object to that as a matter of form. I think it is a change to the [i]ndictment and it is being done on the last moment. So I am putting that objection on the record. |
| --- | --- |
| THE COURT: | Were you given a copy of the actual [j]udgment in the discovery? |
| [Defense counsel]: | I was given a copy of one [j]udgment in the actual discovery. |
| THE COURT: | Is that the one you're talking about, [prosecutor]? |
| [Prosecutor]: | This is the Tarrant County one. |

2

(Parties conferred off the record.)

THE COURT: [Defense counsel]?

[Defense counsel]: I'm still making that objection, Judge. I've seen the document, but I am still making that objection.

THE COURT: Your objection is overruled.

The record contains an amended indictment, filed on February 24, 2022, striking through the last three digits in the cause number listed for the Tarrant County case. The amended indictment was read aloud, and Macdonald pleaded not guilty. Macdonald also pleaded "not true" to the two allegations of prior DWI offenses.

Houston Yarberry, then a trooper with the Texas Department of Public Safety (DPS), testified that he was patrolling Bypass 35 in Rockport at around 1:00 a.m. on December 2, 2018, when he observed a vehicle "fluctuat[ing] between 35 and 45 miles per hour" even though the speed limit was seventy-five miles per hour. The vehicle also had a "very, very, dim license plate light" and was "turning its blinker on and off," so Yarberry initiated a traffic stop. Macdonald was the driver and sole occupant of the vehicle. Yarberry said that, when he approached the vehicle, Macdonald was "rambling," "talking fast," and "just acting weird," which made Yarberry suspect Macdonald was under the influence of alcohol or narcotics. Yarberry asked Macdonald to sit in his patrol car, and she did so but was "still acting very strange." He said there was no odor of alcohol, so he asked her about medications. Video recordings of the interaction from Yarberry's bodycam and dashcam were entered into evidence.

Yarberry administered the horizontal gaze nystagmus test and observed no nystagmus; however, he did observe "lack of convergence," meaning "one eye will track off" when attempting to cross eyes, which Yarberry said was a sign of cannabis

intoxication.[1] The officer next administered the walk-and-turn test, and he testified that Macdonald exhibited "all eight clues" of intoxication and "couldn't stop shaking" during that test. He also asked Macdonald to perform a one-leg stand, but she "almost fell over" and so he stopped the test after about eight seconds.

Yarberry said he administered several other tests "to try to determine what substance" Macdonald was under the influence of. First, he asked her to recite the alphabet from D to X; she did "relatively well," missing only one letter. Next, he administered the "Romberg test" by asking Macdonald to lean her head back and count the passage of thirty seconds to herself. The first time Macdonald tried this, she counted for one minute and ten seconds; the second time she tried it, she was successful. Finally, Yarberry asked Macdonald to lean her head back, close her eyes, and touch her nose with her finger on alternating hands. Macdonald used the correct hands but Yarberry said "her movements were very rigid." He arrested her for DWI and obtained a warrant for a blood sample.

Yarberry was present at the "intoxilyzer room" at the Aransas County Jail when the blood sample was taken. He said Macdonald "was very hesitant, because she believed there was no probable cause," but he assured her that the warrant was valid. A surveillance video from the room was entered into evidence. It shows that Macdonald refused to submit to the taking of a sample, and Yarberry and another officer had to forcibly hold Macdonald down while technicians drew blood. Yarberry testified this was "so she wouldn't get hurt by getting stuck with the needle." There was difficulty with

---

[1] Yarberry added that he observed what he thought was synthetic marijuana in the center console of the vehicle. On cross-examination, Yarberry acknowledged that there was no odor of marijuana inside the vehicle, and that Macdonald claimed the substance was tobacco. He said there was no testing done on the substance.

obtaining the sample at first, so he left the room and obtained a different blood draw kit. Eventually, Macdonald cooperated and a sample was obtained. Yarberry identified the sample at trial on the basis that it had his handwriting on it and was sealed with his name and the date. According to Yarberry, Macdonald did not ask for or need any medical attention during the blood draw.

The prosecutor then sought to introduce State's Exhibits 3 and 4, certified copies of judgments which the State alleged show Macdonald's prior DWI convictions. At a bench conference, the following colloquy occurred:

| | |
|---|---|
| [Defense counsel]: | Judge, they are trying to offer the priors through this witness. I don't believe he is the qualified witness. I don't think they are going to have a sponsoring witness. |
| [Prosecutor]: | They are self-authenticating, so I don't need a sponsoring witness. |
| [Defense counsel]: | It needs to say the same person convicted in those offenses is the same person here. They don't have that, Judge, so I will object to the exhibit. |
| THE COURT: | I will allow it in. And I will let you object. We will see what he says. So, I don't understand what the objection is. |
| [Defense counsel]: | My objection is that the judgments— |
| THE COURT: | Well, he is not going to authenticate the judgments. |
| [Defense counsel]: | She is showing the officer the judgments. He doesn't have any clue about the judgments. |
| THE COURT: | Object when she asks. |
| | I'm telling you, he doesn't know anything. Why are you handing him the judgments? |
| [Prosecutor]: | He has seen them. |
| THE COURT: | Okay. I don't know how you will get it in. Doesn't make sense to me. |

| [Prosecutor]: | He's going to be able to say that is her driver's license and her name and date of birth that's on there. |
| THE COURT: | Okay. You can offer them without handing them to him, if you want to. |
| [Prosecutor]: | He is here and somebody needs to say it to the jury. I can just offer them into evidence. They are self-authenticating, but I would like him to be able to verify what he can. |
| THE COURT: | Okay. You can ask him questions and—how much longer do you have with him? |
| [Prosecutor]: | That's all I have with him. |
| THE COURT: | All right. Offer them separately and we will go from there. |

In the presence of the jury, the prosecutor asked to introduce Exhibit 3 as "a self-authenticated document and an exception to hearsay." Defense counsel stated: "We do have objections, Judge, as previously stated on the record. We don't think this document is proper before the jury, Judge." The trial court overruled the objection and admitted the exhibit. The same objection and ruling were then made as to Exhibit 4. Yarberry recited from the judgments and noted that the name, date of birth, and driver's license number of the convicted individual match those of Macdonald.

On cross-examination, Yarberry conceded that he did not know Macdonald personally and that it was possible that it is "very normal" for her to be "confused or distraught," which is how he described her in his police report. He stated that Macdonald denied being intoxicated at the scene, and that she initially agreed to give a blood sample, but later changed her mind. When he held her down during the blood draw, she said he was hurting her.

Sheryl Peyton, a DPS forensic toxicologist, testified that she transported State's

6

Exhibit 2, the blood draw kit at issue, from the Austin lab where she worked to the courthouse. She identified the kit from its identification number and her initials. Peyton said she performed an "initial drug screen" on one of the vials contained in the kit. The initial screen gave "a positive response in the amines category," so she did additional testing via gas chromatography–mass spectrometry.[2] The confirmatory testing showed 0.50 milligrams of methamphetamine per liter of Macdonald's blood. According to Peyton's training, this was a "very high" level—about ten times the level which would be expected from "medicinal" use. Over defense counsel's objection as to her qualifications, Peyton testified that the level of methamphetamine observed in Macdonald's blood would "more likely than not" cause a person to demonstrate signs of impairment. On cross-examination, Peyton conceded that the blood sample had been stored in a refrigerator at the lab for over seven months between the initial testing and the confirmatory testing. She stated, however, that the delay "would not affect" the sample because amines are "very stable."

The jury found Macdonald guilty as charged, and this appeal followed.

## II.    DISCUSSION

### A.    Amendment of Indictment

By her first issue, Macdonald contends that the trial court erred, necessitating reversal and a judgment of acquittal, by overruling her objection to the amended indictment. She claims that, because the objection was overruled, she was not afforded ten days to prepare for trial on the amended indictment, as required by article 27.11 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 27.11 ("In all cases

---

[2] Peyton stated that the initial testing was negative for marijuana.

7

the defendant shall be allowed ten entire days, exclusive of all fractions of a day after his arrest, and during the term of the court, to file written pleadings."); *id.* art. 27.12 ("In cases where the defendant is entitled to be served with a copy of the indictment, he shall be allowed the ten days time mentioned in the preceding Article to file written pleadings after such service.").

Macdonald cites case law establishing that, "when the provisions of [article 27.11] are either formally or informally invoked, the statutory ten days must be afforded the accused" and "[r]efusal to grant such time will result in reversible error" without the necessity of showing harm. *Oliver v. State*, 646 S.W.2d 242, 245 (Tex. Crim. App. 1983) ("Under the terms of [article 27.11], a mandatory statute, there is no requirement that the defendant show harm; he must merely show that he made an affirmative request for the allowed statutory time, and such was refused."). Macdonald also cites *Trevino v. State*, in which this Court held that appellant was entitled to a new trial when he was reindicted three days before trial was set to begin, but the trial court overruled his article 27.11 objection. 900 S.W.2d 815, 817 (Tex. App.—Corpus Christi–Edinburg 1995, no pet.) (finding "it was reversible error to deny appellant ten days to file pleadings after being reindicted").

We disagree that article 27.11 compels reversal in this case. In *Oliver*, the Texas Court of Criminal Appeals found that article 27.11 had been "informal[ly]" invoked by counsel's statement that "due to the fact that the defense had already prepared its case and because of the surprise in the State's change in the information we would not be prepared to go to trial at this time." 646 S.W.2d at 245. Here, on the other hand, Macdonald's counsel merely objected that the change to the indictment "is being done on

8

the last moment." Counsel did not articulate any statutory basis for his objection and did not request a continuance or an additional period of time to prepare, either explicitly or implicitly. *Cf. id.*; *Trevino*, 900 S.W.2d at 817 (noting that "appellant timely objected and invoked the mandatory provisions of article 27.11"). Under these circumstances, where no "affirmative request for the allowed statutory time" was made, we conclude that Macdonald did not formally or informally invoke article 27.11. *See Oliver*, 646 S.W.2d at 245. Therefore, the trial court did not err in denying her ten days to prepare as required by the code of criminal procedure. *Cf. id.*[3]

We note that, even if the trial court had sustained Macdonald's objection and disallowed the amendment, the evidence adduced at trial—which showed that the cause number for the 2010 Tarrant County judgment was "1211276"—would have been sufficient to support conviction on the original indictment. *See Human v. State*, 749 S.W.2d 832, 839 (Tex. Crim. App. 1988) (finding no fatal variance where felony DWI indictment alleged appellant was previously convicted in cause number "F-80-1197-MN"

---

[3] Appellant has also failed to invoke article 28.10 of the code of criminal procedure, which governs amendments to an indictment. That statute provides:

(a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

(b) A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.

(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

TEX. CODE CRIM. PROC. ANN. art. 28.10. Because appellant has not cited or invoked article 28.10, either at trial or on appeal, we need not decide whether the amendment was proper under that statute. *See* TEX. R. APP. P. 33.1, 38.1(i), 47.1. We nevertheless observe that, because Macdonald made no request for a continuance—whether formal or informal, explicit or implicit, on any grounds—the court did not violate subsection (a) of article 28.10 in failing to grant her one.

but evidence showed conviction in cause number "F80–11997N"); *Cole v. State*, 611 S.W.2d 79, 82 (Tex. Crim. App. 1981) (finding no fatal variance where indictment alleged appellant was previously convicted in cause number "87954" but evidence referred to cause number "87594"; and noting that "[w]hen all the other proof supports the allegations which are otherwise sufficient, a transpositional error in the cause numbers would not prevent a defendant from finding the record of the prior conviction and presenting a defense"). Therefore, to the extent Macdonald argues by her first issue that the amendment should have been disallowed and trial should have proceeded on the original indictment, she has not shown that she suffered harm as a result of the trial court's ruling. *See* TEX. R. APP. P. 44.2(b).

Macdonald's first issue is overruled.

**B.    Motion for New Trial**

Macdonald filed a motion for new trial on March 11, 2022, alleging the following:

1.    . . . Prior to the jury trial, on January 31, 2022[,] the State had filed a grievance against defense counsel alleging improper ex parte communication between counsel and the trial judge who presided over the Defendant's trial. The State failed to disclose to [sic] that a grievance was filed, the nature of that grievance, and that a possible conflict existed prior to jury trial. As a consequence of the State[']s failure to disclose this to the defense and to the trial court, the defendant's rights to a fair trial were violated.

2.    The Defendant requests in the interest of justice to grant a new trial. Defendant had an absolute right to be informed that a grievance was filed against her attorney, and the right to know the nature of allegations, as well as the fact that conflict now existed before the jury trial.

Prior to the sentencing hearing on March 23, 2022, the trial court briefly heard argument on the motion and denied it. Macdonald argues by her second issue on appeal that the

10

trial court erred, violating her right to a fair trial, by denying the motion.[4] We review the denial of a motion for new trial for abuse of discretion, reversing only if no reasonable view of the record could support the trial court's ruling. *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017).

First, citing only various constitutional provisions, Macdonald contends that it "would seem to be axiomatic" that the circumstances alleged in the motion "would be a material fact necessarily needing to be disclosed to the Defendant before either the trial or punishment began." Second, she argues that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), and the Michael Morton Act, TEX. CODE CRIM. PROC. ANN. art. 39.14, by failing to disclose the existence of the grievance in discovery.

We disagree on both points. Pursuant to *Brady*, a defendant's constitutional due process rights are violated when: (1) the State fails to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to the defendant; and (3) the evidence is material—that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. 373 U.S. 83, 87 (1963); *see United States v. Bagley*, 473 U.S. 667, 675 (1985); *Thomas v. State*, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992). Similarly, the Michael Morton Act requires the State to disclose to the defense evidence which is "material"; i.e., evidence "having a logical connection to a consequential fact." *Watkins v. State*, 619 S.W.3d 265,

---

[4] Macdonald concedes that, because the motion for new trial was not supported by an affidavit, she was not entitled to an evidentiary hearing on the motion. *See Smith v. State*, 286 S.W.3d 333, 338–39 (Tex. Crim. App. 2009) (noting that a trial judge "abuses his discretion in failing to hold a hearing on a motion for new trial when that motion raises matters which are not determinable from the record," but "we require, as a prerequisite to a hearing when the grounds in the motion are based on matters not already in the record, that the motion be supported by an affidavit, either of the defendant or someone else, specifically setting out the factual basis for the claim").

290 (Tex. Crim. App. 2021) (construing TEX. CODE CRIM. PROC. ANN. art. 39.14).

Even if there was evidence to substantiate Macdonald's complaint—i.e., that the State had previously "filed a grievance against defense counsel alleging improper ex parte communication between counsel and the trial judge"—she has not identified any "consequential fact" to which this alleged fact has a logical connection, nor has she established that such evidence would be favorable to her.[5] *See id.*; *see also Brady*, 373 U.S. at 87. We agree with the State that "[a]ny such grievance or conduct in an unrelated case would not be material or relevant to this case."[6] Accordingly, the trial court did not err by denying Macdonald's motion for new trial. Her second issue is overruled.

## C. Admission of Evidence

Macdonald's final two issues concern the trial court's admission of evidence. We review such rulings for abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). There is no abuse of discretion if the trial court's ruling is "within the zone of reasonable disagreement." *Id.*

### 1. State's Exhibits 3 and 4

By her third issue, Macdonald challenges the admission of State's Exhibits 3 and 4, which are copies of the alleged prior DWI judgments. The exhibits were admitted during Yarberry's testimony over defense counsel's objection that "I don't believe he is the qualified witness." On appeal, citing Texas Rule of Evidence 401, Macdonald contends

---

[5] Though the new trial motion suggested that the filing of a grievance generated "a possible conflict," it did not specify the basis for any conflict, nor can we discern one.

[6] As the State notes, records of pending disciplinary proceedings against Texas attorneys are generally required to be kept confidential. *See* TEX. R. DISCIPLINARY P. 2.16(A)(1) (providing that pending disciplinary proceedings and records shall remain confidential unless: (1) the respondent waived confidentiality; (2) the proceeding is based on conviction of a serious crime; or (3) disclosure is ordered by a court of competent jurisdiction).

the judgments "were not relevant to the fact testimony of the sponsoring witness" because Yarberry "had no personal knowledge of [Macdonald]'s criminal history, nor could [he] attest that [Macdonald] was the person referenced within the exhibits."

To preserve error for appeal, the point of error on appeal must comport with the objection made at trial. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Here, Macdonald's complaint on appeal (that the evidence was "not relevant to the fact testimony of the sponsoring witness") does not comport with the complaint defense counsel made at trial (that the witness was not qualified). Accordingly, this issue has not been preserved for our review. *See* TEX. R. APP. P. 33.1(a)(1).

Even if the issue were preserved, it would lack merit. The judgments were relevant because they directly established an essential element of the charged offense—i.e., that Macdonald had been twice previously convicted of "an offense relating to the operating of a motor vehicle while intoxicated." *See* TEX. R. EVID. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."); TEX. PENAL CODE ANN. § 49.09(b)(2).[7] The trial court did not abuse its discretion in admitting the exhibits.[8] We overrule Macdonald's third issue.

---

[7] Macdonald has not alleged, at trial or on appeal, that the judgments were not properly authenticated. Nevertheless, we note that certified copies of public records which contain a seal and a signature, like the exhibits at issue here, are self-authenticating and "require no extrinsic evidence of authenticity in order to be admitted." TEX. R. EVID. 902(1). Moreover, a judgment of a previous criminal conviction against the defendant, when "admitted to prove any fact essential to the judgment," is not excluded by the rule against hearsay. TEX. R. EVID. 803(22)(B).

[8] To establish that Macdonald was convicted of prior offenses, the State had to prove beyond a reasonable doubt that: (1) the prior convictions exist, and (2) Macdonald was the defendant in those prior convictions. *See Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). Macdonald does not dispute that the admitted evidence, including State's Exhibits 3 and 4, satisfied the State's burden.

13

## 2. Expert Opinion Testimony

Macdonald contends by her fourth issue that Peyton was not qualified to give opinion testimony "as to the effects of methamphetamine on [Macdonald]" or "any behavior resulting from the use thereof." She further argues that Peyton's testimony was not reliable and should not have been admitted as expert testimony.

At trial, the prosecutor posed the following question to Peyton: "So based on your training and experience, would someone who had a .05 [sic] amount of methamphetamine in their blood have lost their regular use of physical or mental faculties?" Defense counsel objected as follows: "I don't believe she is qualified, unless there is [sic] some factors that have been presented and I don't think that has been done, Judge. I don't think you can extrapolate this from this case, Judge." The trial court overruled the objection. Peyton then testified that, with a level of 0.50 milligrams of methamphetamine per liter of blood, "it is more likely than not that a person would be demonstrating signs of impairment based on the effect that it has on the brain and the entire body in general." She clarified on cross-examination that she was not opining about the effects of methamphetamine on Macdonald in particular but rather was speaking about the "general [e]ffects" of a "high dose" of methamphetamine on any person.

Under the rules of evidence, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. For scientific evidence "to be considered sufficiently reliable as to be of help to a jury," the proponent must show by clear and convincing evidence that: "(1) the underlying scientific

14

theory [is] valid; (2) the technique applying the theory [is] valid; and (3) the technique [was] properly applied on the occasion in question." *Reynolds v. State*, 204 S.W.3d 386, 390 (Tex. Crim. App. 2006) (citing *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992)); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) ("[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.").

At trial, defense counsel objected only to Peyton's qualifications as an expert; he did not object on the basis that her testimony was scientifically unreliable under Rule 702 or *Kelly*. Accordingly, this issue has been preserved only insofar as it challenges Peyton's qualifications as an expert. *See* TEX. R. APP. P. 33.1(a)(1); *Shaw v. State*, 329 S.W.3d 645, 655 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (noting that "[a] party may challenge expert testimony on at least three specific grounds"—qualification, reliability, and relevance—and "an objection based on one of these requirements does not preserve error as to another"). Moreover, the issue has been preserved only as to Peyton's testimony about the "general [e]ffects" of a "high dose" of methamphetamine on a person, because counsel did not object until a question in that regard was asked.

An expert witness must have a "sufficient background in a particular field," and that background must "go[] to the very matter on which [the witness] is to give an opinion." *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). "Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case." *Rodgers v. State*, 205 S.W.3d 525, 527–28 (Tex. Crim. App. 2006). "For this reason, appellate courts rarely disturb the trial court's

15

determination that a specific witness is or is not qualified to testify as an expert." *Id.* at 528 n.9.

Prior to her substantive testimony, Peyton explained that she has eighteen years of experience as a forensic toxicologist and has previously testified in court on approximately 180 occasions. She has a degree in biochemistry and a master's degree in forensic science with a specialty in toxicology. She stated that she attended a week-long course covering "all aspects of alcohol" and "every category of drug" from "pharmacology to metabolism to effects." In order to attain her current rank as a "Level V" forensic scientist, she had to undergo "grueling" testing regarding, among other things, "evidence, seized drugs, [and] DNA." Peyton also said she did "very intensive" online training during the pandemic.

On this record, we cannot conclude that the trial court abused its "great discretion" in determining that Peyton was qualified to opine about the "general [e]ffects" of a "high dose" of methamphetamine on a person. Macdonald's fourth issue is overruled. *See* TEX. R. EVID. 702; *Rodgers*, 205 S.W.3d at 527–28.

## III. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
2nd day of March, 2023.